# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 12, 2007        Decided May 25, 2007

No. 06-7058

TERMORIO S.A. E.S.P. AND
LEASECO GROUP, LLC,
APPELLANTS

v.

ELECTRANTA S.P., ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 03cv02587)

*Thomas R. Johnson, Jr.* argued the cause for appellants. With him on the briefs were *Stephanie K. Hines*, *Kevin M. Sali*, and *Benjamin Sharp*.

*Paul J. Kiernan* argued the cause for appellees. With him on the brief was *Stephen A. Bogorad*.

Before: TATEL and GARLAND, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge:* Appellant TermoRio S.A. E.S.P. ("TermoRio") and appellee Electrificadora del Atlantico S.A. E.S.P. ("Electranta"), a state-owned public utility, entered into a Power Purchase Agreement ("Agreement") pursuant to which TermoRio agreed to generate energy and Electranta agreed to buy it. When appellee allegedly failed to meet its obligations under the Agreement, the parties submitted their dispute to an arbitration Tribunal in Colombia in accordance with their Agreement. The Tribunal issued an award in excess of $60 million dollars in favor of TermoRio. Shortly after the Tribunal issued its award, Electranta filed an "extraordinary writ" in a Colombia court seeking to overturn the award. In due course, the Consejo de Estado ("Council of State"), Colombia's highest administrative court, nullified the arbitration award on the ground that the arbitration clause contained in the parties' Agreement violated Colombian law.

Following the judgment by the Consejo de Estado, TermoRio and co-appellant LeaseCo Group, LLC ("LeaseCo"), an investor in TermoRio, filed suit in the District Court against Electranta and the Republic of Colombia seeking enforcement of the Tribunal's arbitration award. Appellants contended that enforcement of the award is required under the Federal Arbitration Act, 9 U.S.C. § 201 ("FAA"), which implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *opened for signature* June 10, 1958, 21 U.S.T. 2517, *reprinted in* 9 U.S.C. § 201 (historical and statutory notes) ("New York Convention"). The District Court dismissed LeaseCo as a party for want of standing, dismissed appellants' enforcement action for failure to state a claim upon which relief could be granted, and, in the alternative, dismissed appellants' action on the ground of *forum non conveniens*. *TermoRio S.A. E.S.P. v. Electrificadora del Atlantico S.A. E.S.P.*, 421 F. Supp. 2d 87 (D.D.C. 2006).

We affirm the judgment of the District Court. The arbitration award was made in Colombia and the Consejo de Estado was a competent authority in that country to set aside the award as contrary to the law of Colombia. *See* New York Convention art. V(1)(e) ("Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked . . . if that party furnishes . . . proof that: . . . [t]he award . . . has been set aside . . . by a competent authority of the country in which, or under the law of which, that award was made."). Because there is nothing in the record here indicating that the proceedings before the Consejo de Estado were tainted or that the judgment of that court is other than authentic, the District Court was, as it held, obliged to respect it. *See Baker Marine (Nig.) Ltd. v. Chevron (Nig.) Ltd.*, 191 F.3d 194 (2d Cir. 1999). Accordingly, we hold that, because the arbitration award was lawfully nullified by the country in which the award was made, appellants have no cause of action in the United States to seek enforcement of the award under the FAA or the New York Convention.

## I. BACKGROUND

The facts in this case are carefully set forth in the District Court's published Memorandum opinion. *See TermoRio*, 421 F. Supp. 2d at 89-91. Because the facts relevant to this appeal are undisputed, we have incorporated significant portions of the District Court's statement as a part of our Background section.

> Defendant Republic of Colombia is a foreign state. Defendant [Electranta], incorporated in 1957 to provide electricity services in and around Barranquilla, Colombia, was 87% owned and controlled by Colombia. Consequently, it is an agency or instrumentality of Colombia within the meaning of the Foreign Sovereign Immunities Act (28 U.S.C. § 1603(b)).

In the mid-1990s, Colombia's Atlantic coast experienced significant electricity shortages. In 1995 LeaseCo entered into discussions with Electranta to modernize Electranta's operations and build a new power plant in Colombia. A year later, LeaseCo and Electranta formed two Colombian entities seriatim: first, Coenergia, and then TermoRio. Coenergia owned 99.9% of all shares of TermoRio. Initially, LeaseCo and Electranta owned roughly equal shares of Coenergia, so that they accordingly owned roughly equal shares of TermoRio. However, at the time of Electranta's complaint (in June 2004), LeaseCo and Electranta were transferring sole ownership of the 99.9% of the shares of TermoRio to LeaseCo.

At the heart of this lawsuit is [the Agreement] between TermoRio and Electranta [executed] in June 1997. Under this Agreement, TermoRio agreed to generate energy and Electranta agreed to buy it. In reliance on this Agreement, TermoRio invested more than $7 million to construct a power plant. The Agreement also provided that any dispute between the parties would be resolved by binding arbitration in Colombia.

However, in March 1998, Colombia announced a plan to sell the assets of all its Atlantic Coast utilities, including Electranta, to private owners and other Colombian utilities. On April 16, 1998, Colombia began to privatize by creating a new company, Electrocaribe, to receive and hold Electranta's assets and liabilities. However, at the behest of Colombia, Electranta did not transfer its duties under the Agreement to buy power from TermoRio. Electranta was left with obligations under the Agreement to buy power, but no resources to do so. As a result, Electranta failed to buy power from TermoRio and breached the Agreement. This breach of the Agreement, plaintiffs allege, had a direct effect in the United States affecting the extensive marketing

of [Electrocaribe's] assets in the United States, by affecting the price of these assets, by causing United States purchasers to acquire a substantial interest in these assets, and by eliminating any obligation for Electrocaribe . . . to fulfill the [Agreement].

. . . .

The Agreement's arbitration clause provides (as translated):

> Any dispute or controversy arising between the Parties in connection to the execution, interpretation, performance or liquidation of the Contract shall be settled through mechanisms of conciliation, amiable composition or settlement, within a term no longer than three weeks. If no agreement is reached, either party may have recourse to an arbitral tribunal that *shall be governed in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce*. The tribunal shall be made up of three (3) members appointed by the Chamber, and shall be seated in the city of Barranquilla[, Colombia]. The award, which shall be binding on the parties, must be rendered within a maximum term of three months.

Pursuant to this provision, after defendants failed to meet their obligations under the Agreement, the parties entered into a long arbitration process. On December 21, 2000, a Tribunal of three arbitrators, applying ICC procedural rules, determined that Electranta breached the Agreement at the direction of Colombia. The Tribunal ordered Electranta to pay TermoRio an award of $60.3 million USD.

. . . .

Neither the Republic of Colombia nor Electranta has complied with the $60 million arbitral award, and both have refused to pay any portion of it. Plaintiffs allege that Colombia and Electranta have also sought to undermine the award in several other respects.

. . . [O]n December 23, 2000 (right after the Tribunal issued the award), Electranta filed an "extraordinary writ" with a court in Barranquilla, seeking to overturn the award. In response the Council of State vacated it. The Council of State reasoned that the arbitration had to be conducted in accordance with Colombian law, and Colombian law in effect as of the date of the Agreement did not expressly permit the use of ICC procedural rules in arbitration.

In . . . another action, plaintiff TermoRio filed two lawsuits in Colombian courts to rescind the transfer of Electranta's assets and to hold Colombia liable for breach of the Agreement. A Colombian court dismissed the first action on procedural grounds. The second count [was] still pending in the Colombian court system [as of March 17, 2006].

*Id.* at 89-90 (internal footnotes, quotation marks, and citations omitted).

In the District Court, appellants TermoRio and LeaseCo filed an Amended Complaint and Application for Confirmation and Enforcement of Arbitral Award and for Other Relief. The appellants initially alleged four causes of action: fraudulent conveyance, expropriation, an action to enforce the arbitration award, and breach of contract. By stipulation, however, the first two claims were dropped, leaving only the action to enforce the arbitration award and the breach of contract claim before the District Court. Appellees filed a motion to dismiss in which they raised numerous defenses, including, *inter alia*, that the award was properly vacated by a Colombian court; that the

District Court lacked subject matter jurisdiction by operation of the Foreign Sovereign Immunities Act and because the statute of limitations barred the suit; that the complaint should be dismissed under the doctrine of *forum non conveniens*; and that LeaseCo, an American corporation not party to the Agreement, lacked standing to enforce the arbitral award.

The District Court, after hearing arguments on the motion and reviewing the submissions of the parties – which included supporting memoranda, affidavits, sworn declarations, and the decisions of the Colombian courts – granted appellees' motion to dismiss. The trial court ruled as follows:

> [A]n accompanying Order dismisses LeaseCo for lack of standing. The court lacks subject matter jurisdiction over plaintiffs' breach of contract claim both under the Foreign Sovereign Immunities Act and by operation of the applicable statute of limitations. Although the court has subject matter jurisdiction over the remaining arbitral award enforcement claim, it is dismissed for failure to state a claim; the Colombian courts have vacated the award. In the alternative, the order dismisses the complaint on the ground of forum non conveniens. In this light, defendants' remaining arguments regarding abstention, dismissal of Colombia as a party, and service of process on defendants need not be addressed.

*Id*. at 92. On appeal, appellants have abandoned their breach of contract claim.

Because it is clear and undisputed that TermoRio has standing to bring this lawsuit, we need not address the standing of LeaseCo. *Military Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998) ("If one party has standing in an action, a court need not reach the issue of standing of other parties when it makes no difference to the merits of the case." (quoting *Ry. Labor Executives' Ass'n v. United States*, 987 F.2d 806, 810

(D.C. Cir. 1993))). In addition, because we hold that the District Court properly dismissed appellants' enforcement action under Article V(1)(e) of the New York Convention, we find it unnecessary to determine whether the case might have been dismissed on the ground of *forum non conveniens*, the alternative basis announced by the District Court. Likewise, we find it unnecessary to address any presumptive veil-piercing claim asserted by appellants to allow suit against the Republic of Colombia or whether such a claim is barred by the relevant statute of limitations. The only issue of consequence before this court is whether the District Court erred in dismissing appellants' claim to enforce the disputed arbitration award.

## II. ANALYSIS

### A. *Standard of Review*

This court reviews *de novo* the District Court's dismissal for failure to state a claim, *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006). As to the alternative basis for dismissal announced by the District Court, "[w]e may reverse a *forum non conveniens* determination . . . only for a 'clear abuse of discretion.'" *TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296, 303 (D.C. Cir. 2005) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)); *see also Piper Aircraft*, 454 U.S. at 257 ("The *forum non conveniens* determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion . . . .").

### B. *The Applicable International Agreement*

As the District Court noted,

[t]he United States has ratified and codified two Conventions that allow courts in one country to enforce arbitral awards rendered in other signatory countries. *See* Inter-American Convention on International Commercial

Arbitration[, *opened for signature* Jan. 30, 1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245,] (the "Panama Convention") (reprinted after 9 U.S.C. § 301), and The Convention on the Recognition and Enforcement of Arbitral Awards (the "New York Convention") (reprinted after 9 U.S.C. § 201). Colombia is a signatory to both of these Conventions. The New York Convention provides that signatory nations are to recognize and enforce arbitral awards rendered in other nations. *See* New York Convention Art. III. However, enforcement of awards "may be refused" if, *inter alia*, they were set aside by a competent authority in the country in which the award was made. *See* New York Convention Art. V(1)(e).

. . . .

> FN4. [Appellants] maintain that the Panama Convention applies to this dispute because a majority of the parties to the arbitration agreement are citizens of states that have ratified the Panama Convention. *See* 9 U.S.C. § 305(1). However, codification of the Panama Convention incorporates by reference the relevant provisions of the New York Convention (*see* 9 U.S.C. § 302), making discussion of the Panama Convention unnecessary.

*TermoRio*, 421 F. Supp. 2d at 91 & n.4. We need not decide whether 9 U.S.C. § 302 incorporates the New York Convention, as opposed to other provisions of law related to the New York Convention, because the relevant provisions of the Panama Convention and the New York Convention are substantively identical for purposes of this case and neither party challenges the District Court's analysis. We therefore resolve this matter with reference to and using the language of the New York Convention.

**C.** *The Validity of a Foreign Judgment Vacating an Arbitration Award*

The Supreme Court has recognized an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985); *see also Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985) (noting that where parties have seen fit to adopt arbitration clauses in their agreements, there is a "strong federal policy in favor of enforcing [them]"). "And at least since this Nation's accession in 1970 to the [New York] Convention, and the implementation of the Convention in the same year by amendment of the Federal Arbitration Act, [9 U.S.C. §§ 201-208], that federal policy applies with special force in the field of international commerce." *Mitsubishi,* 473 U.S. at 631 (internal citation omitted). "As international trade has expanded in recent decades, so too has the use of international arbitration to resolve disputes arising in the course of that trade." *Id*. at 638. The Convention's purpose was to "encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). And, as the Court has noted, "[t]he utility of the [New York] Convention in promoting the process of international commercial arbitration depends upon the willingness of national courts to let go of matters they normally would think of as their own." *Mitsubishi*, 473 U.S. at 639 n.21.

The basic understanding of the New York Convention is that "[e]ach Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon, under the conditions laid down in the . . . articles [of the Convention]." New York Convention, art. III. Under the Convention, "the

critical element is the place of the award: if that place is in the territory of a party to the Convention, all other Convention states are required to recognize and enforce the award, regardless of the citizenship or domicile of the parties to the arbitration." *Creighton Ltd. v. Gov't of the State of Qatar*, 181 F.3d 118, 121 (D.C. Cir. 1999) (quoting RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 487 cmt. b (1987)).

Although its purpose is to encourage the recognition and enforcement of commercial arbitration agreements in international contracts, the New York Convention enumerates specific grounds upon which a court may refuse recognition and enforcement of an arbitration award. On this point, Article V provides:

> 1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
>
>> (a) The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
>>
>> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
>>
>> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters

submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

New York Convention art. V(1)-(2). These provisions of the Convention have been implemented by the FAA. *See* 9 U.S.C. § 207 ("The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.").

The Convention provides a carefully crafted framework for the enforcement of international arbitral awards. Under the Convention, "[o]nly a court in a country with primary jurisdiction over an arbitral award may annul that award." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan*

*Gas Bumi Negara*, 364 F.3d 274, 287 (5th Cir. 2004) ("*Karaha Bodas II*"). As the Second Circuit has noted:

> the Convention mandates very different regimes for the review of arbitral awards (1) in the state in which, or under the law of which, the award was made, and (2) in other states where recognition and enforcement are sought. The Convention specifically contemplates that the state in which, or under the law of which, the award is made, will be free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief. *See* Convention art. V(1)(e). However, the Convention is equally clear that when an action for enforcement is brought in a foreign state, the state may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention.

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997).

In this case, appellees point out that, because the arbitration award was made by a Colombian Tribunal convened in that country, pursuant to an agreement between Colombian companies to buy and sell electrical power in that country, Colombia is the nation with primary jurisdiction over this dispute. Appellees argue further that, under the clear terms of the Convention, appellants' action to enforce the arbitration award fails to state a cause of action. On this latter point, appellees point to Article V(1)(e) of the Convention, which provides that

> [r]ecognition and enforcement of [an] award may be refused, at the request of the party against whom it is invoked, . . . if that party furnishes . . . proof that: . . . [t]he award . . . has been set aside . . . by a competent authority of the country in which, or under the law of which, that award was made.

New York Convention art. V(1)(e). Pursuant to this provision of the Convention, a secondary Contracting State normally may not enforce an arbitration award that has been lawfully set aside by a "competent authority" in the primary Contracting State. Because the Consejo de Estado is undisputedly a "competent authority" in Colombia (the primary State), and because there is nothing in the record here indicating that the proceedings before the Consejo de Estado were tainted or that the judgment of that court is other than authentic, appellees contend that appellants have no cause of action under the FAA or the New York Convention to enforce the award in a Contracting State outside of Colombia. On the record at hand, we agree.

In reaching this conclusion, we generally subscribe to the reasoning of the Second Circuit in *Baker Marine*, 191 F.3d 194. In that case, Baker Marine, a barge company, executed a services contract with Danos, a shipping concern. The contract contained a clause requiring the parties to arbitrate disputes or controversies arising under their agreement. Following such a dispute, the parties "submitted to arbitration before panels of arbitrators in Lagos, Nigeria." *Id.* at 195. The panels awarded Baker Marine nearly $3 million in damages, but the award was subsequently set aside by a Nigerian court. Baker Marine then sought enforcement of the award in the United States District Court for the Northern District of New York. The trial court refused to recognize the award, citing Article V(1)(e) of the New York Convention, as well as principles of comity. On appeal, Baker Marine argued that the trial court erred in refusing to enforce the award, because it had been set aside by the Nigerian court on grounds that would have been invalid under U.S. law if presented in an American court. The appellate court rejected this argument and affirmed the trial court's decision not to recognize the award, noting that the parties "contracted in Nigeria that their disputes would be arbitrated under the laws of Nigeria." *Id.* at 197. The court also remarked on the

undesirable consequences that would likely follow from adoption of Baker Marine's argument:

> [A]s a practical matter, mechanical application of domestic arbitral law to foreign awards under the Convention would seriously undermine finality and regularly produce conflicting judgments. If a party whose arbitration award has been vacated at the site of the award can automatically obtain enforcement of the awards under the domestic laws of other nations, a losing party will have every reason to pursue its adversary "with enforcement actions from country to country until a court is found, if any, which grants the enforcement."

*Id.* at 197 n.2 (quoting ALBERT JAN VAN DEN BERG, THE NEW YORK ARBITRATION CONVENTION OF 1958: TOWARDS A UNIFORM JUDICIAL INTERPRETATION 355 (1981)). The same principles and concerns govern here, where appellants seek to enforce an arbitration award that has been vacated by Colombia's Consejo de Estado. For us to endorse what appellants seek would seriously undermine a principal precept of the New York Convention: an arbitration award does not exist to be enforced in other Contracting States if it has been lawfully "set aside" by a competent authority in the State in which the award was made. This principle controls the disposition of this case.

### D. *Considerations of "Public Policy"*

Appellants argue that courts in the United States "have discretion under the Convention to enforce an award despite annulment in another country," *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas*, 335 F.3d 357, 369 (5th Cir. 2003), because Article V(1)(e) merely says that "[r]ecognition and enforcement *may* be refused" if the award has been set aside by a competent authority in the primary state, New York Convention art. V(1)(e) (emphasis added). More

particularly, appellants contend that "a state is not required to give effect to foreign judicial proceedings grounded on policies which do violence to its own fundamental interests." Appellants' Br. at 22 (quoting *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 931 (D.C. Cir. 1984)). Appellants' characterizations of the applicable law are understated and thus misguided.

Appellants concede that *Baker Marine* is not incorrect in its holding that "it is insufficient to enforce an award solely because a foreign court's grounds for nullifying the award would not be recognized under domestic United States law." Appellants' Br. at 24. Rather, appellants allege that the District Court should have exercised its discretion to enforce the arbitration award in this case, because, *inter alia*, "the Council of State's decision was contrary to both domestic Colombian and international law; recognition of that decision would frustrate clearly expressed international and United States policy; and the process leading to the nullification decision demonstrated the Colombian government's determination to deny Plaintiffs fair process." *Id*.

In advancing their claims, appellants rely heavily on *In re Chromalloy Aeroservices*, 939 F. Supp. 907 (D.D.C. 1996). In that case, the District Court addressed an arbitration agreement between the Egyptian Air Force and an American in which the parties provided that the losing party would not seek review of the arbitration award. While the American company's petition for enforcement of its award was pending before the District Court, Egypt filed an appeal with the Egyptian Court of Appeal to nullify the award. The District Court refused to recognize the decision of the Egyptian court to nullify the award, finding that to do so would violate clear United States public policy in favor of arbitration and would reward Egypt's breach of the express contractual agreement not to take any appeal from the arbitration award. We need not decide whether the holding in *Chromalloy* is correct, because, as appellees point out, "the present case is

plainly distinguishable from *Chromalloy* where an express contract provision was violated by pursuing an appeal to vacate the award. Here, Electranta preserved its objection that the panel was not proper or authorized by law, promptly raised it in the Colombian courts, and received a definitive ruling by the highest court on this question of law." Appellees' Br. at 13 (internal citation omitted).

Furthermore, appellants are simply mistaken in suggesting that the Convention policy in favor of enforcement of arbitration awards effectively swallows the command of Article V(1)(e). A judgment whether to recognize or enforce an award that has not been set aside in the State in which it was made is quite different from a judgment whether to disregard the action of a court of competent authority in another State. "The Convention specifically contemplates that the state in which, or under the law of which, the award is made, will be free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief." *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 23; *see also Karaha Bodas II*, 364 F.3d at 287-88. This means that a primary State necessarily may set aside an award on grounds that are not consistent with the laws and policies of a secondary Contracting State. The Convention does not endorse a regime in which secondary States (in determining whether to enforce an award) routinely second-guess the judgment of a court in a primary State, when the court in the primary State has lawfully acted pursuant to "competent authority" to "set aside" an arbitration award made in its country. Appellants go much too far in suggesting that a court in a secondary State is free as it sees fit to ignore the judgment of a court of competent authority in a primary State vacating an arbitration award. It takes much more than a mere assertion that the judgment of the primary State "offends the public policy" of the secondary State to overcome a defense raised under Article V(1)(e).

The decision in *Baker Marine* notes that the "[r]ecognition of the [foreign court's] judgment in [that] case d[id] not conflict with United States public policy," 191 F.3d at 197 n.3, thus at least implicitly endorsing a "public policy" gloss on Article V(1)(e). However, the decision does not say that a court in the United States has unfettered discretion to impose its own considerations of public policy in reviewing the judgment of a court in a primary State vacating an arbitration award based upon the foreign court's construction of the law of the primary State. Rather, as appellees argue, *Baker Marine* is consistent with the view that, "[w]hen a competent foreign court has nullified a foreign arbitration award, United States courts should not go behind that decision absent extraordinary circumstances not present in this case." Appellees' Br. at 12.

In applying Article V(1)(e) of the New York Convention, we must be very careful in weighing notions of "public policy" in determining whether to credit the judgment of a court in the primary State vacating an arbitration award. The test of public policy cannot be simply whether the courts of a secondary State would set aside an arbitration award if the award had been made and enforcement had been sought within its jurisdiction. As noted above, the Convention contemplates that different Contracting States may have different grounds for setting aside arbitration awards. Therefore, it is unsurprising that the courts have carefully limited the occasions when a foreign judgment is ignored on grounds of public policy.

> A judgment is unenforceable as against public policy to the extent that it is "repugnant to fundamental notions of what is decent and just in the State where enforcement is sought." *Tahan v. Hodgson*, 662 F.2d 862, 864 (D.C. Cir. 1981) (quoting Rest.2d Conflict of Laws § 117, comment c (1971)). The standard is high, and infrequently met. As one court wrote, "[o]nly in clear-cut cases ought it to avail defendant." *Tahan*, 662 F.2d at 866 n.17 (citing von

Mehren & Trautman, *Recognition of Foreign Adjudications: A Survey and a Suggested Approach*, 81 HARV. L. REV. 1601, 1670 (1968); Paulsen & Sovern, *"Public Policy" in the Conflict of Laws*, 56 COLUM. L. REV. 969, 980-81, 1015-16 (1956)). In the classic formulation, a judgment that "tends clearly" to undermine the public interest, the public confidence in the administration of the law, or security for individual rights of personal liberty or of private property is against public policy.

*Ackermann v. Levine*, 788 F.2d 830, 841 (2d Cir. 1986).

Article V(2)(b) of the Convention, unlike Article V(1)(e), incorporates an express public policy exception. Article V(2)(b) provides:

Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that . . . [t]he recognition or enforcement of the award would be contrary to the public policy of that country.

New York Convention, art. V(2)(b). It is noteworthy that in construing this provision the courts have been very careful not to stretch the compass of "public policy." As one court has noted:

Under Article V(2)(b) of the New York Convention, a court may refuse to recognize or enforce an arbitral award if it would be contrary to the public policy of that country. The public policy defense is to be construed narrowly to be applied only where enforcement would violate the forum state's most basic notions of morality and justice.

*Karaha Bodas II*, 364 F.3d at 305-06 (internal citations and quotation marks omitted). Given that Article V(1)(e) contains no exception for public policy, it would be strange indeed to

recognize such an implicit limitation in Article V(1)(e) that is broader than the express limitation in Article V(2)(b).

Accepting that there is a narrow public policy gloss on Article V(1)(e) of the Convention and that a foreign judgment is unenforceable as against public policy to the extent that it is "repugnant to fundamental notions of what is decent and just in the United States," *Tahan*, 662 F.2d at 864 (internal quotation marks omitted), appellants' claims still fail. Appellants have neither alleged nor provided any evidence to suggest that the parties' proceedings before Colombia's Consejo de Estado or the judgment of that court violated any basic notions of justice to which we subscribe.

Appellants contend that the Consejo de Estado's ruling conflicts with Colombia's obligation under the New York Convention, but that bare allegation surely provides no basis for us to ignore Article V(1)(e) on grounds of public policy. As the court noted in *Yusuf Ahmed Alghanim & Sons*:

> [U]nder the Convention, the power and authority of the local courts of the rendering state remain of paramount importance. "What the Convention did not do . . . was provide any international mechanism to insure the validity of the award where rendered. This was left to the provisions of local law. The Convention provides no restraint whatsoever on the control functions of local courts at the seat of arbitration." [W. Laurence Craig, *Some Trends and Developments in the Laws and Practice of International Commercial Arbitration*, 30 TEX. INT'L L.J. 1, 11 (1995).]. Another commentator explained:
>
> > Significantly, [Article V(1)(e)] fails to specify the grounds upon which the rendering State may set aside or suspend the award. While it would have provided greater reliability to the enforcement of awards under the Convention had the available grounds been defined

> in some way, such action would have constituted meddling with national procedure for handling domestic awards, a subject beyond the competence of the Conference.

Leonard V. Quigley, *Accession by the United States to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, 70 YALE L.J. 1049, 1070 (1961).  From the plain language and history of the Convention, it is thus apparent that a party may seek to vacate or set aside an award in the state in which, or under the law of which, the award is rendered. Moreover, the language and history of the Convention make it clear that such a motion is to be governed by domestic law of the rendering state . . . .

126 F.3d at 22-23.

The District Court correctly observed that "[t]his matter is a peculiarly Colombian affair," concerning, as it does, "a dispute involving Colombian parties over a contract to perform services in Colombia which led to a Colombian arbitration decision and Colombian litigation." *TermoRio*, 421 F. Supp. 2d at 101, 103. To this, we would add that the parties also agreed to be bound by Colombian law.  The Consejo de Estado, Colombia's highest administrative court, is the final expositor of Colombian law, and we are in no position to pronounce the decision of that court wrong.

### E. *The District Court's Grant of Appellees' Motion To Dismiss*

Appellants have raised one final issue that warrants our attention.  The District Court dismissed appellants' action under Federal Rule of Civil Procedure 12(b)(6), which provides that a suit may be dismissed on the pleadings for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).   Normally, dismissal is appropriate under Rule

12(b)(6) only if it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Broudy v. Mather*, 460 F.3d 106, 116-17 (D.C. Cir. 2006) (internal quotation marks omitted) (discussing dismissal under FED. R. CIV. P. 12(b)(6)). Appellants claim that the District Court erred in granting the motion to dismiss under Rule 12(b)(6), because an affirmative defense only supports dismissal if that defense is unavoidably established by the facts alleged on the face of the complaint. Appellants argue that Colombia's nullification of the arbitration award is only grounds for a Rule 12(b)(6) dismissal if the nullification conclusively defeats appellants' claim. Application of Article V(1)(e) cannot be conclusive, appellants say, because, in their view, the New York Convention and United States law provide that an arbitration award can be enforced despite having been nullified in the country in which it was issued. Thus, according to appellants, the District Court erred in dismissing their action under Rule 12(b)(6) solely on the basis of a foreign nullification.

The short answer to appellants' claim is that their reference to the requirements of Rule 12(b)(6) is misplaced. Chapter 2 of the FAA incorporates and codifies the New York Convention. 9 U.S.C. § 201. However, the statute makes clear that "[Chapter 1 of the FAA] applies to actions and proceedings brought under [Chapter 2] to the extent [Chapter 1] is not in conflict with [Chapter 2] or the Convention as ratified by the United States." *Id.* § 208. Chapter 1, in turn, states that "[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." *Id.* § 6. Therefore, it appears that motions to enforce arbitral awards should proceed under motions practice, not notice pleading. Indeed,

> [o]ne of the clearest examples of the operation of Section 208 is its making motion practice under Section 6 applicable to proceedings under the [New York

Convention]. Thus, an arbitration award under the Convention may be enforced by filing a petition or application for an order confirming the award supported by an affidavit. The hearing on such a petition or application will take the form of a summary procedure in the nature of federal motion practice.

3 FED. PROC., L. ED. § 4:183 (1999).

In light of the foregoing, it is clear that the District Court properly addressed appellants' application for enforcement of the arbitration award. The District Court reviewed appellants' application and appellees' response, reviewed the affidavits submitted by the parties in support of their respective positions, and, on the basis of that review, arrived at its judgment. This satisfied the District Court's obligation under the New York Convention and squared with the approach that has been endorsed by some of our sister circuits. *See, e.g.*, *Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 46 (2d Cir. 1994) ("Since [appellee] appropriately sought relief in the form of a motion, the court was not required to comply with the pleading requirements of FED. R. CIV. P. 12(b)."); *O.R. Sec., Inc. v. Prof'l Planning Assocs.*, 857 F.2d 742, 745-46 (11th Cir. 1988) (same); *Imperial Ethiopian Gov't v. Baruch-Foster Corp.*, 535 F.2d 334, 335 & n.2 (5th Cir. 1976) (same).

Furthermore, we note that, even if we were to assess the District Court's action by reference to the rules of notice pleading, we would find no error. Where, as here, both parties had sufficient opportunity to present evidence beyond the pleadings, this court has the authority to convert a motion to dismiss under Rule 12(b)(6) to a grant of summary judgment under Federal Rule of Civil Procedure 56 and affirm the judgment of the District Court. *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805 (D.C. Cir. 2006). Summary judgment under Rule 56 is appropriate where

the pleadings and the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1041 (D.C. Cir. 2003) (quoting FED. R. CIV. P. 56(c)). Such is the case here.

Both parties had ample time to submit documents outside of the pleadings and did, in fact, submit such evidence. However, as noted by the District Court, appellants did not so much as allege that the proceedings in Colombia were repugnant to the public policy of the United States. *TermoRio*, 421 F. Supp. 2d at 102. And during oral argument before this court, appellants conceded that they were in no way foreclosed from introducing additional evidence or materials to the District Court to support a challenge to the validity or integrity of the proceedings that took place in Colombia. On this record, given the undisputed facts and the command of Article V(1)(e) of the New York Convention, summary judgment is appropriate. We must honor the judgment of the Colombia court vacating the disputed arbitration award, because there is nothing in the record here indicating that the proceedings before the Consejo de Estado were fatally flawed or that the judgment of that court is other than authentic.

## III. CONCLUSION

For the foregoing reasons, the judgment of the District Court dismissing appellants' application for enforcement of the arbitration award is affirmed.

*So ordered.*