# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Submitted March 7, 2017          Decided July 7, 2017

No. 16-7087

GETMA INTERNATIONAL,
APPELLANT

v.

REPUBLIC OF GUINEA,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-01616)

*Allen B. Green*, *William T. O'Brien*, and *Ivan W. Bilaniuk* were on the briefs for appellant.

*Jeffrey M. Prokop*, *James Grohsgal*, and *Jamie L. Shookman* were on the brief for appellee.

Before: HENDERSON and SRINIVASAN, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*:  This case arises from a contract dispute between two foreign entities:  Getma International, a French company, and the Republic of Guinea.

After Guinea terminated a concession agreement between the two parties, an arbitral tribunal issued a €39 million award (plus interest) in favor of Getma. Guinea appealed the award to the Common Court of Justice and Arbitration of the Organization for the Harmonization of Business Law in Africa (CCJA), a court of supranational jurisdiction for Western and Central African States. The CCJA set aside Getma's award. Getma nonetheless seeks to enforce the annulled award in the United States.

For us to intervene in this quintessentially foreign dispute, we would need to find the CCJA's annulment of the award to be repugnant to the United States's most fundamental notions of morality and justice. The district court held that Getma failed to satisfy that stringent standard, and we agree.

I.

In 2008, Guinea sought bids to expand and operate a port in Conakry, the country's capital. Getma submitted the winning bid. Getma and the Republic of Guinea then entered into a twenty-five-year Concession Agreement. Their partnership was short-lived. In December 2010, Guinea elected a new president, who quickly terminated the Agreement. Getma, protesting that the government's sudden about-face violated the contract, demanded a termination fee. Guinea denied any breach of the contract, alleging among other complaints that Getma had won the bidding process by bribing the previous Guinean administration.

The Agreement's dispute-resolution provision stipulated that the parties could "irrevocably settle[]" any disputes through "arbitration proceedings subject to the Arbitration Rules of the [CCJA]." J.A. 249. The parties selected a tribunal of three arbitrators, all of whom were based in France. The

CCJA fixed the arbitrators' fees at approximately €61,000. After 14 months of arbitration, the arbitrators contacted the CCJA's Office of the Secretary General (which served as a liaison between the arbitrators and the CCJA) about increasing the fees to €450,000. In an e-mail, a representative responded that the office would "contact the [CCJA] soon to adjust the fees." J.A. 1408.

The CCJA denied the request by written order, citing precedent establishing that an "arbitrator's fees and expenses are set exclusively by" the CCJA. J.A. 541-42, 554. The arbitrators did not take no for an answer. Immediately after the decision, the arbitrators wrote the CCJA two letters renewing their request for increased fees. Likewise, Getma sent its own letter urging the CCJA to reconsider its decision. The CCJA remained unmoved. By April 2014, the CCJA had apparently informed the arbitrators on four separate occasions that the €61,000 fee would stand.

Disregarding the CCJA's decision, the arbitrators told the parties they would withhold the arbitral award until the parties paid them €450,000. When the CCJA's Secretary General learned about the arbitrators' demand, he reprimanded them and told them that their fee request was void. In a written letter, the Secretary warned Getma that the award would be "subject to invalidation" if it included an "invalid arrangement" for arbitrator fees. J.A. 839.

A few days later, the arbitrators issued a decision in favor of Getma, awarding the company €39 million plus interest. Although the award contained no mention of any demand for increased arbitrators' fees, the tribunal continued pursuing payment. And despite the CCJA's warning that an invalid fee arrangement could jeopardize any award, Getma paid the arbitrators €225,000. The arbitrators later filed suit in the Paris

Court of Appeals to collect the remaining €225,000 ostensibly owed by Guinea. The Court ordered Getma to pay the balance (plus interest) on a theory of joint and several liability.

Meanwhile, Guinea filed an annulment petition with the CCJA, asking the court to set aside the arbitral award. Sitting en banc, the CCJA annulled the award. The court concluded that the arbitrators "breached [their] duty by deliberately ignoring the mandatory provisions" governing fees. J.A. 1468. It added, however, that "the arbitral proceedings may be reopened." J.A. 1471. To date, Getma has not sought to reopen the proceedings.

Getma instead pursued relief in the United States, seeking enforcement of its now-annulled award under the Federal Arbitration Act, 9 U.S.C. §§ 201-208. The Act implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, better known as the New York Convention. Under the New York Convention, a district court may refuse to enforce a foreign award if "a competent authority" has set it aside under the law of the country in which the award was made. New York Convention art. V(1)(e), June 10, 1958, 21 U.S.T. 2517. The district court refused to enforce the annulled award on that ground. *In re Arbitration of Certain Controversies Between Getma Int'l & Republic of Guinea*, 191 F. Supp. 3d 43, 55 (D.D.C. 2016).

## II.

Getma appeals the district court's decision, arguing that we should give effect to the annulled award. We will enforce an annulled award only if the annulment is "repugnant to fundamental notions of what is decent and just" in the United States. *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 938 (D.C. Cir. 2007) (quoting *Tahan v. Hodgson*, 662 F.2d

862, 864 (D.C. Cir. 1981)). Getma has not satisfied that demanding burden.

As an initial matter, the parties debate the applicable standard of review. Getma argues that we should review de novo a district court's decision to confirm or vacate a foreign arbitral award, while Guinea contends we should review for abuse of discretion. This Circuit has not expressly addressed the standard of review, and our sister circuits have disagreed on the issue. *Compare Corporación Mexicana de Mantenimiento Integral, S. De R.L. de C.V. v. Pemex-Exploración y Producción*, 832 F.3d 92, 100 (2d Cir. 2016), *with Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG*, 783 F.3d 1010, 1014-15 (5th Cir. 2015). "We need not resolve this question" here, as we would affirm the district court "under either standard." *See de Csepel v. Republic of Hungary*, 714 F.3d 591, 606 (D.C. Cir. 2013).

On the merits, there is no dispute that the CCJA is "a competent authority" for purposes of article V(1)(e) of the New York Convention. And for reasons of international comity, we have declined to "second-guess" a competent authority's annulment of an arbitral award absent "extraordinary circumstances." *TermoRio*, 487 F.3d at 936-39 (internal quotation marks omitted). "The standard is high, and infrequently met," such that we cannot enforce an annulled award on a mere showing that the annulment is erroneous or conflicts with the United States's public policy. *Id.* at 938. Instead, we will set aside an annulment only if it violates this country's "most basic notions of morality and justice." *Id.* (quoting *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 305-06 (5th Cir. 2004)). Getma's arguments under that standard are unpersuasive.

First, Getma claims that a Guinean judge on the 12-member CCJA tainted the annulment decision. It is true that, after Guinea prevailed, its Minister of Justice boasted in a televised interview that the Guinean judge, Fodé Kante, had alerted Guinea to the "flaws" in its case. J.A. 1638. Before the district court, however, the Minister filed a declaration recanting his interview statement, characterizing it as baseless self-promotion. The district court credited the declaration, largely because the Minister's interview statement made no sense chronologically: Judge Kante was appointed two months *after* Guinea's last submission in the annulment proceeding, so he could have done nothing to shape Guinea's presentation. Nor could he have tipped the outcome against Getma, as the full 12-member court issued a unanimous decision. *Getma Int'l*, 191 F. Supp. 3d at 54. Getma points to no evidence corroborating the Minister's initial interview statement and thus gives us no reason to disturb the district court's credibility finding.

Second, Getma claims that the CCJA thwarted the parties' intent to contract around the CCJA's fee schedule. The contract, however, evinces no such intent. The contract's arbitration clause specified that each party was to select one arbitrator; those two arbitrators were to select a third; each party was to "bear the cost of the arbitrator it appoints"; and all other costs were to "be shared equally by the [p]arties." J.A. 27. The contract therefore prescribed only how the parties would select arbitrators and divide the costs. It gave no indication concerning how the parties would determine arbitrators' fees, much less that it would displace the CCJA's fee rules. To the contrary, the parties agreed that the arbitration would be "subject to . . . 'The CCJA Arbitration Rules.'" *Id.* According to longstanding CCJA precedent, "[t]he arbitrator's fees and expenses are set exclusively by the [CCJA]," and

"[a]ny separate arrangement between the parties and the arbitrators concerning their fees is null and void." J.A. 554.

In any event, even if the parties intended to opt out of the CCJA's fee schedule, the CCJA's decision to enforce its set fees for arbitrators is not "repugnant to fundamental notions of what is decent and just in the United States." *See TermoRio*, 487 F.3d at 939 (quoting *Tahan*, 662 F.2d at 864). Getma argues that the United States's public policy generally favors allowing parties to contract around default rules. In *TermoRio*, however, we held that, despite the United States's "emphatic federal policy" in favor of arbitration, a foreign sovereign's differing policy was not repugnant to our own. *Id.* at 933 (internal quotation marks omitted). The same is true here. The CCJA's policy in setting arbitral fees—even against the parties' wishes—does not violate the United States's most basic norms of morality and justice.

Third, Getma fashions a sort of cumulative-error argument. It argues that, when considered in light of its previous allegations, certain purported oddities in the proceeding add up to a fatal problem. Again, Getma misses the mark. It primarily contends that the CCJA promised to increase the arbitrators' fees and thus blindsided the parties by rigidly enforcing its fee schedule via the annulment proceeding. In support of its claim, Getma offers statements from the Office of the Secretary General. But as the district court observed, that office had no unilateral authority to increase the arbitrators' fees, and a representative had "merely informed" the arbitrators "that he would contact the CCJA about revising the arbitrators' fees." *See Getma Int'l*, 191 F. Supp. 3d at 50. The CCJA itself never promised greater fees than its default schedule prescribed.

In fact, the CCJA made clear that increased fees would be unacceptable. The CCJA informed the arbitrators at least five times that its fee schedule was binding, and the Secretary General "formally prohibited" the arbitrators "from seeking payment of fees directly from the parties." J.A. 828. In his final formal letter, the Secretary warned the parties that, "if the final award includes the payment of the amount of €450,000 to the arbitrators, in accordance with the invalid arrangement, the award will potentially be subject to invalidation by [the CCJA]." J.A. 839. Although the final award did not expressly demand increased arbitral fees, the arbitrators pursued (and eventually collected from Getma) their requested €450,000 fee. In that light, although the CCJA's decision to set aside Getma's entire award might seem to be a harsh penalty, the parties had fair notice that the arbitrators' insistence on increased fees could jeopardize the award.

Finally, Getma claims that the CCJA misinterpreted its own law in annulling the award. Getma does not argue, however, that "erroneous legal reasoning" alone could constitute a violation of public policy under the New York Convention. *See* Appellant Br. 45-46. It alleges only that the CCJA's flawed legal analysis, together with other evidence of taint and corruption, justify enforcing the annulled award. As explained, however, there is scant evidence of taint in the CCJA proceedings, and we see no infirmities that prejudiced Getma in a manner so offensive to "basic notions of morality and justice" as to justify disregarding the CCJA's decision. *See* *TermoRio*, 487 F.3d at 938. We therefore decline to enforce the annulled award.

9

\*　　\*　　\*　　\*　　\*

For the foregoing reasons, we affirm the judgment of the district court.

*So ordered.*