# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 6, 2018   Decided October 26, 2018

No. 17-7154

DIAG HUMAN S.E.,
APPELLANT

v.

CZECH REPUBLIC - MINISTRY OF HEALTH,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-00355)

*Hyman L. Schaffer* argued the cause and filed the briefs for appellant.

*Alana E. Fortna* argued the cause for appellee. With her on the brief was *Leonard Fornella*. *Dean A. Calland* entered an appearance.

Before: SRINIVASAN and WILKINS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

2

RANDOLPH, *Senior Circuit Judge*:  This is an appeal from the judgment of the district court refusing to enforce an arbitral award against the Czech Republic Ministry of Health and in favor of Diag Human, S.E., a corporation organized under the laws of the Principality of Liechtenstein.  Under the New York Convention, federal courts enforce duly rendered foreign arbitral awards, subject to certain exceptions.  The district court held that this award fell into one of those exceptions – the award was not "binding on the parties."  *Diag Human, S.E. v. Czech-Ministry of Health*, 279 F. Supp. 3d 114, 121 (D.D.C. 2017).  For the reasons that follow, we agree.

The parties have been engaged in this dispute for nearly three decades.  The arbitration commenced after the Czech Republic allegedly interfered with Diag Human's blood plasma business in the early 1990s.  The then-Minister of Health allegedly violated unfair competition laws by sending to Novo Nordisk, a Danish company and Diag Human's major business partner, a letter accusing Diag Human of ethical violations.  This led Novo Nordisk to cease work with Diag Human, which was fatal to the latter's business in the Czech Republic.  Further details concerning the background of the dispute are recounted in this court's previous opinion and not necessary to repeat here.  *Diag Human, S.E. v. Czech-Ministry of Health*, 824 F.3d 131, 132–34 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 1068 (2017).

A series of arbitral awards flowed from proceedings pursuant to the parties' arbitration agreement.  Initially, in 1997, an arbitral panel confirmed that the Czech Republic had committed a wrongful act and caused damages to Diag Human (the "Interim Award").  This award left the issue of the amount of damages for later proceedings.  In 2002, this was followed by a partial damages award covering undisputed damages of approximately $10 million (the "Partial Award").  In 2008, an additional arbitral panel considered the full scope of damages

and awarded Diag Human approximately $400 million in damages and interest, with further interest accruing until payment (the "Final Award").  The action in the district court sought to confirm the 2008 Final Award.

"One of the traditional features of arbitration is its exclusion of appeal . . .."  *See* Alexander J. Bělohlávek, *Arbitration Law of Czech Republic: Practice and Procedure* 1349 (2013).  Accordingly, most international arbitral systems use a single panel to produce a final and binding award.  *See, e.g.*, United Nations Comm'n on Int'l Trade Law, Arbitration Rules art. 34(2).  But Czech arbitration law permits parties to agree to a review process in which a second arbitral panel can revisit the original award with the power to uphold, nullify, or modify it.  Zákon o rozhodčím řízení a o výkonu rozhodčích nálezů [Law on Arbitral Proceedings and Enforcement of Arbitral Awards], Zákon č. 216/1994 Sb. § 27 (Czech) [hereinafter Czech Arbitration Law].  Although in the Czech Republic this procedure is "rarely used by parties in practice," Bělohlávek, *supra*, at 1350, it was used here.  The arbitration agreement allowed a party to request a review of any arbitral award within 30 days of receipt.

Each of the three awards was submitted for review according to this procedure.  The Interim and Partial Awards were confirmed and upheld by review panels consisting of different arbitrators.  In each case, an "arbitral award" was issued pursuant to § 23(a) of the Czech Arbitration Law explicitly upholding the decision of the first panel.  The arbitral awards entered into legal force and effect following these confirmations.  After the Final Award was issued, each of the parties challenged it and requested review, although Diag Human later withdrew its request.  The review panel, after a lengthy delay, did not explicitly confirm the arbitral award as had the previous review panels. Instead, it issued a "Resolution"

4

which "discontinued the proceedings." The effect of this Resolution on the 2008 Final Award is at the core of this controversy.

We enforce foreign arbitral awards according to the New York Convention, "part of a 'carefully crafted framework for the enforcement of international arbitration awards.'" *Belize Bank Ltd. v. Gov't of Belize*, 852 F.3d 1107, 1110 (D.C. Cir. 2017) (quoting *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 729 (D.C. Cir. 2012)), *cert. denied*, 138 S. Ct. 448 (2017); *see also* 9 U.S.C. §§ 201–208. A court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement" as specified in the Convention. 9 U.S.C. § 207. Article V sets out the circumstances that enable a court to refuse to enforce an award; these are tightly construed, and the burden is placed on the party opposing enforcement. Convention on the Recognition and Enforcement of Foreign Arbitral Awards art. V, *opened for signature* June 10, 1958, 21 U.S.T. 2517 [hereinafter New York Convention]; *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 934–35 (D.C. Cir. 2007). "Recognition and enforcement of an award may be refused" if the "award has not yet become binding on the parties." New York Convention art. V(1)(e). An award may also be "set aside" by a "competent authority" of the rendering jurisdiction. *Id.*

Under these circumstances, the district court found that the terms of the parties' arbitration agreement precluded the award from entering into legal effect to become "binding" under Article V(1)(e). The agreement specified that the award would go into effect "[i]f the review application of the other party has not been submitted within the deadline." Arb. Agreement ¶ V. The district court therefore ruled that because a party requested

review, and the review "ended the arbitration," the award did not go into effect. *Diag Human*, 279 F. Supp. 3d at 120–21.[1]

We agree with the district court's result, but for different reasons. Not only the termination of the review, but also the content of the arbitration review panel's "Resolution," prevented the Final Award from becoming binding. Under the agreement, the parties had recourse to another arbitration panel, which was sufficient to prevent the award from becoming binding at that time. *See Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1100–01 (9th Cir. 2011) (citing *Fertilizer Corp. of India v. IDI Mgmt., Inc.*, 517 F. Supp. 948, 958 (S.D. Ohio 1981)). The Resolution resulting from the review proceeding does not permit the award to stand. Instead, it offers multiple grounds for the award's invalidity. The review panel had the power to nullify the award under Czech arbitration law, and it discontinued the proceedings as a whole. Both the text of the Resolution and the import of Czech law lead us to this result.

The language of the Resolution indicates that it invalidated the Final Award. As a threshold matter, the parties disagree about whether the "reasoning" – that is, the longer explanatory portions of the award – can aid in interpreting the decretal paragraphs which are the legally operative portion of the award. According to the parties' experts in Czech law, when those upfront paragraphs are ambiguous, the reasoning may be used to decipher them. The review panel's pronouncement that "[t]he proceedings are discontinued," in this two-step arbitration, is ambiguous and makes consultation of the reasoning necessary.

---

[1] Diag Human contends that this leads to an absurd result because a voluntarily withdrawn review request would result in invalidating the award.

The review panel found jurisdictional problems with the entirety of the arbitration after the conclusion of the first damages phase. Among other findings, the review panel held that the Final Award should have been precluded as res judicata by the earlier Partial Award. That 2003 Partial Award, which resulted in the payment of $10 million to Diag Human, was deemed by the rendering panel to represent only a subset of the damages of the claim, leaving the full amount to be decided later. The review panel saw it differently. Because there was an award in legal force on the claim, and because "a partial decision may only be issued on one of otherwise separate claims or on a claim against only one of several defendants," the partial decision here was actually a complete decision. The Partial Award did not specify that it dealt only with a separate claim or only with one of several defendants. The review panel noted that the 2008 Final Award "merely deducted the previously awarded amount from the remaining amount of lost profits," suggesting that it was revisiting an issue previously decided. The review panel therefore concluded that the "obstacle" of res judicata was "effectively established." There is a remedy when a prior decision is res judicata: the later proceedings must be discontinued.

The review panel's Resolution identified another problem. During the pendency of the arbitration, third parties initiated judicial proceedings concerning assignment of parts of the claims of the parties. The review panel noted that "[p]arallel court and arbitration proceedings on the same case" are not allowed by Czech law. The parties thus waived further arbitration by not invoking the arbitration agreement to bar these court proceedings. This let the court proceedings take precedence. The arbitration review panel applied this logic to the interventions as well as to the original dispute, providing an additional reason undercutting the Final Award, though the

panel noted that "the obstacle of *res* [*j*]*udicata* had arisen earlier."

Diag Human believes that this section of the Resolution denies the review panel's jurisdiction to look at the award. We find no clear statement to this effect, much less a statement that would supersede the panel's clear statements on res judicata. While the Resolution states that "[n]evertheless, the arbitrators can perform any assessment (review) only on condition that a procedurally effective request for review exists," it never clearly states that the review panel itself lacked jurisdiction. The panel considered a number of issues, including the delivery of the review request, and the duty to instruct the parties on procedural issues, but the panel never stated that it lacked power of review. While highlighting that the review request was "procedurally ineffective," the panel went on to use its jurisdiction to consider and decide issues relevant to the Final Award.

Diag Human attacks the underlying merits of the review panel's decision, particularly its discussion of res judicata, as "plainly wrong under Czech law." But we do not sit in judgment of the reasoning of the arbitral decision. Mistakes of law by the arbitral panel are not ours to correct. "It is not enough . . . to show that the [arbitrators] committed an error—or even a serious error" for this court to invalidate the Resolution. *Stolt–Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 671 (2010); *see also Enron Nigeria Power Holding, Ltd. v. Fed. Republic of Nigeria*, 844 F.3d 281, 289 (D.C. Cir. 2016).

After analyzing the issues in the case, the review panel finished by noting that "for all the above-described reasons, the arbitrators were forced to discontinue the arbitration proceedings." With the prominent discussion of res judicata – one of those "reasons" – the Resolution discontinued the proceedings including the previous award.

Czech arbitral law fortifies our understanding of the Resolution. When the "binding" status of an award is in doubt under Article V(1)(e) of the New York Convention, the court may look to the law of the rendering jurisdiction, though litigation of the issue is rare. *See Pactrans Air & Sea, Inc. v. China Nat'l Chartering Corp.*, No. 3:06-cv-369/RS-EMT, 2010 WL 1332085, at *1 (N.D. Fla. Mar. 29, 2010) (applying Chinese law); *Fertilizer Corp.*, 517 F. Supp. at 955–58 (applying Indian law and International Chamber of Commerce rules). This is true particularly when the agreement incorporates local arbitral law, as this agreement did here. *See Aperture Software GmbH v. Avocent Huntsville Corp.*, No. 5:14-cv-00211-JHE, 2015 WL 12838967, at *2–3 (N.D. Ala. Jan. 5, 2015) (determination of binding nature does not require looking at foreign law unless the agreement specially incorporates it). The scope of the powers of the review arbitrators, and the interpretation of the Resolution's effect, thus hinge on Czech law. This is true even though in an enforcement proceeding, federal law governs the procedure.

Under the law of the Czech Republic, there are two outcomes of an arbitral proceeding: an arbitral award or a resolution ("order" or "decree" in some translations). Czech Arbitration Law § 23. An arbitral award is judicially enforceable and is used when any legal obligation is imposed on a party. Bělohlávek, *supra*, at 1138–39. When an arbitral award is not to be issued, a resolution ends the proceedings. *Id.* at 1139. The review panel in this case issued a resolution.

Diag Human argues that a resolution may not be used to nullify an arbitral award. This is not clear from Czech arbitration law, which does not spell out exactly when an award or resolution is required and how it would impact the review procedure. Czech Arbitration Law § 23. Experts equivocated on the point, although resolutions generally decide procedural

issues. J.A. 933 ("I generally do not believe that an arbitral award should (or can according to the applicable law) be cancelled by a resolution, *although the review arbitrators may in theory indeed proceed in this way*.") (emphasis added); J.A 575 (noting that in Czech civil litigation, resolutions are used "to decide on the conditions of the proceedings; on discontinuing or suspending the proceedings" and other procedural matters). We are unconvinced that the panel's failure to use the nomenclature of "award" changes the import of the decision. If the panel wanted to uphold the award, it could have done so. Both the Interim and Prior Awards were explicitly confirmed with arbitral awards.

When the panel "discontinued the proceedings," it was ending both the review and the original panel's work. A panel's review of a prior arbitral award is not a separate arbitration proceeding, but part of a single arc of arbitration. "The revision of an award shall be part of the arbitral proceedings . . .." Czech Arbitration Law § 27; *see also* J.A. 605–06 (opinion of Aleš Gerloch & Vladimír Balaš), 904 (opinion of Alena Bányaiová). If the original and review panels are part of the same arbitral proceedings, the "proceedings" that are "discontinued" constitute the entire arbitration. *See* Bělohlávek, *supra*, at 1139 ("Arbitrators may issue a resolution terminating the proceedings at any time during the proceedings should the procedural circumstances allow . . ..") . This can be done even when the original panel issued an award, which prevents that award from having "legal force and effect." *Id.* at 1372. Coupled with the statements that strongly suggest that the Final Award was fatally flawed, we must conclude that the review arbitrators included both panels in its discontinuation of proceedings.

It is undisputed that the review panel had the powers that it exercised here. The review panel had power to set aside the award. It had the additional power to reach judgments on the

merits, to collect new evidence, and to modify the award as it saw fit. *Id.* at 1352–56. Terminating the proceedings, and in doing so nullifying the arbitral award, was within the powers delegated to the review panel. The parties' agreement contemplated this result by mandating review mirroring Czech Arbitration Law § 27.

Diag Human's remaining argument is that the review panel's nullification of the award is against public policy and that this court should not give it effect. While we have recognized that there is a limited "public policy gloss" on Article V(1)(e) of the New York Convention, "the standard is high, and infrequently met." *TermoRio*, 487 F.3d at 938 (quoting *Ackermann v. Levine*, 788 F.2d 830, 841 (2d Cir. 1986)). In order for us to overturn the "Resolution," the conduct at issue must be "repugnant to fundamental notions of what is decent and just in the State where enforcement is sought." *Id.* at 938 (quoting *Ackermann*, 788 F.2d at 841). We hesitate to disturb the conclusions of the review arbitrators on this basis. The evidence concerning the rendering of the Resolution was too inconclusive to meet the level of "repugnance" required for this rarely met standard. Accordingly, the district court did not err in failing to set aside the decision of the review panel on public policy grounds.

We hold that the Final Award was not "binding" on the Czech Republic and therefore not enforceable.

*Affirmed.*