**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 16, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GOLDGROUP RESOURCES, INC.,

    Applicant - Appellee,

v.

DYNARESOURCE de MEXICO, S.A. DE
C.V.; DYNARESOURCE, INC.,

    Respondents - Appellants.

No. 20-1143

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:16-CV-02547-RM-KMT)**
_____

Jason P. Kathman (Gerrit M. Pronske, with him on the briefs), Pronske & Kathman, P.C.,
Plano, Texas, for Respondents-Appellants.

Christopher M. Jackson (Christopher H. Toll, Marcy G. Glenn, and Kevin C. McAdam,
with him on the brief), Holland & Hart, L.L.P., Denver, Colorado, for Petitioner -
Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **KELLY**, and **PHILLIPS**, Circuit Judges.
_____

**KELLY**, Circuit Judge.
_____

Respondents-Appellants DynaResource de Mexico, S.A. de C.V. and

DynaResource, Inc. ("DynaResources") appeal from the district court's confirmation

of an arbitration award in Applicant-Appellee Goldgroup's favor. We have jurisdiction under 28 U.S.C. § 1291 and 9 U.S.C. § 16, and we affirm.

## Background

This case involves a protracted dispute over a contract relating to a gold mining operation in Mexico. Goldgroup is a subsidiary of a Canadian company with a portfolio of projects in Mexico. DynaUSA, a Texas-based company, incorporated DynaMexico specifically for the purpose of developing the San Jose de Gracia property in the Sinaloa region of Northern Mexico. DynaUSA and DynaMexico jointly comprise DynaResources.

In 2006, Goldgroup and DynaResources entered into an Earn In/Option Agreement (the "Option Agreement") which gave Goldgroup the right to earn up to a 50 percent equity interest in DynaMexico if Goldgroup invested a total of $18 million in four phases over approximately four years. The Option Agreement provided for the appointment of two Goldgroup representatives to DynaMexico's board of directors upon timely completion of the option. At that point, DynaMexico's board would be expanded to five members: two DynaUSA representatives, two Goldgroup representatives, and a fifth member that DynaUSA and Goldgroup would agree upon. The Option Agreement also established a three-person Management Committee comprised of one DynaUSA representative and two Goldgroup representatives.

Most relevant here, the Option Agreement contains a dispute resolution provision specifying that "[a]ll questions or matters in dispute under this Agreement

2

shall be submitted to binding arbitration . . . in Denver, Colorado under the Rules of the American Arbitration Association ('AAA') by a single arbitrator selected by the parties." 4 Aplt. App. 1083. The Option Agreement also states that Mexican law applies "in respect to the shares of DynaMexico and the acquisition thereof," and that venue and jurisdiction for any dispute under the Option Agreement would be in Denver. 4 Aplt. App. 1081.

In 2011, Goldgroup exercised its option, became a 50 percent shareholder in DynaMexico, and appointed two directors. However, before the parties could agree on the fifth director, their relationship broke down due to a dispute over management issues. DynaMexico has not held a board meeting since the dispute arose.

In 2012, DynaResources filed the first of numerous lawsuits between the parties, suing Goldgroup in Texas state court (the "Texas Lawsuit") for a variety of tort claims. Goldgroup defended in part by arguing that DynaResources's claims were subject to arbitration.

In 2013, DynaUSA convened a DynaMexico shareholders meeting without Goldgroup. At the meeting, the attending shareholders purported to issue new DynaMexico shares to DynaUSA as repayment for a debt. The effect was to dilute Goldgroup's interest in DynaMexico from 50 percent to 20 percent. After obtaining the meeting minutes, Goldgroup filed an action in federal court in Mazatlán, Mexico (the "Mazatlán Lawsuit"). Goldgroup sought an annulment of the actions taken at the meeting. The Mazatlán court awarded Goldgroup declaratory and injunctive relief invalidating the issuance of the shares.

3

In March 2014, DynaResources dismissed the Texas Lawsuit. Goldgroup then initiated arbitration in Denver to resolve the parties' disputes under the Option Agreement (the "Arbitration"). In its Demand for Arbitration, Goldgroup alleged a number of claims, including breach of contract, breach of fiduciary duty, and civil conspiracy. In May 2014, DynaResources filed suit in Colorado federal district court to prevent the Arbitration from moving forward. The case was assigned to Judge Krieger (the "Judge Krieger Lawsuit"). DynaResources raised the following arguments: (1) the Arbitration should be stayed until the question of arbitrability is resolved by courts in Mexico, and (2) the arbitration clause in the Agreement was invalid because (a) the Option Agreement ceased to be effective after Goldgroup exercised its option, (b) the claims at issue were not covered by the arbitration clause, and (c) Goldgroup's initiation of the Mazatlán Lawsuit constituted a waiver of its right to arbitrate. DynaResources then asked the arbitrator to dismiss or stay the Arbitration until either Judge Krieger or a Mexico court could rule on the validity and scope of the arbitration agreement.

The arbitrator denied DynaResources's request in Procedural Order No. 1, ruling that (1) the arbitrator had authority to determine the arbitrability of Goldgroup's claims under the American Arbitration Association's International Centre for Dispute Resolution ("AAA-ICDR") Rules, (2) at least some of Goldgroup's claims were arbitrable, and (3) the arbitrator had authority to determine whether Goldgroup waived its right to arbitration.

Meanwhile, DynaResources filed a separate lawsuit against Goldgroup and the AAA in federal court in Mexico City seeking essentially the same relief sought in the Judge Krieger Lawsuit, i.e., an injunction of the Arbitration on the basis that the arbitration provision in the Agreement was invalid or waived (the "Mexico City Lawsuit"). Neither Goldgroup nor the AAA appeared in the Mexico City Lawsuit and contend that they were not properly served.

In September 2015, Judge Krieger entered an order affirming the validity of the Agreement's arbitration provision (the "Judge Krieger Order"). The court concluded that the only arbitrability issue for it to consider was DynaResources's contention that the Option Agreement automatically expired after it was completed, thereby extinguishing the parties' agreement to arbitrate disputes arising under the Option Agreement. The court "reject[ed] that argument out of hand." DynaResource de Mexico, S.A. de C.V. v. Goldgroup Res., Inc., No. 14-cv-01527, 2015 WL 5693560, at *7 (D. Colo. Sept. 29, 2015). It concluded that at least some of Goldgroup's claims in the Demand for Arbitration were subject to arbitration. It instructed that the arbitrator should address DynaResources's remaining "litany of arguments" as to why the Arbitration should not proceed, including the argument that Goldgroup waived its right to arbitrate.

In October 2015, the court in the Mexico City Lawsuit reached the opposite conclusion. It ruled that the arbitration agreement was unenforceable because Goldgroup had waived its right to arbitration by submitting to the jurisdiction of Mexican courts in prior disputes (the "Mexico City Order"). Shortly thereafter

5

Goldgroup filed an amparo action[1] challenging the Mexico City Order on the basis of ineffective service of process.[2]  At the same time, DynaResources claimed in the Arbitration that the Mexico City Order barred the arbitration of Goldgroup's claims. The arbitrator rejected that argument in Procedural Order No. 5, finding that (1) Procedural Order No. 1 bound the parties because they had submitted the arbitrability and jurisdictional questions for his decision, (2) the Judge Krieger Order also bound the parties regarding the arbitrability of Goldgroup's claims, and (3) Goldgroup and the AAA were not properly served in the Mexico City Lawsuit, the Mexico City Court was not informed of Procedural Order No. 1 or the Judge Krieger Order, and DynaResources had engaged in forum shopping.

The arbitration proceeded to a merits hearing in November 2015. DynaResources refused to participate in the hearing, arguing that the Mexico City Order was "way more mandatory" than the arbitrator's and Judge Krieger's orders permitting the arbitration to proceed.  1 Aplt. App. 67.  After Goldgroup presented its arguments, DynaResources was given another opportunity to provide written comments.  It did not do so.  Several months later, it voluntarily dismissed the Judge Krieger Lawsuit.

---

[1] In Mexican courts, an amparo action is a constitutional action that permits review of the legality of a judicial decision.  See Norma Gutierrez, Mexico: New Amparo Law is Enacted, Library of Congress (April 30, 2013), https://www.loc.gov/law/foreign-news/article/mexico-new-amparo-law-is-enacted/.

[2] This action was later dismissed for untimely filing.

In August 2016, the arbitrator ruled in Goldgroup's favor and awarded Goldgroup monetary and equitable relief. The arbitrator made a number of findings in connection with the award, including that (1) the arbitration clause was valid and enforceable, (2) Goldgroup had not waived its right to arbitrate under Mexican or U.S. law by filing the Mazatlán Lawsuit or defending the Texas Lawsuit, and (3) DynaResources breached the Option Agreement and engaged in forum shopping by asking the Mexico City court to rule on the arbitrability of Goldgroup's claims.

Goldgroup next sought confirmation of the award in Colorado federal district court. After answering Goldgroup's application for confirmation of the award, DynaResources filed a petition for nonrecognition of the award under the Inter-American Convention on International Arbitration ("Panama Convention" or "Convention") and moved to vacate the award under the Federal Arbitration Act ("FAA"). Among other reasons, DynaResources argued that the award should not be confirmed because (1) the arbitrator exceeded the scope of his authority by ruling on the issue of whether Goldgroup had waived its right to arbitrate and (2) the Mexico City Order effectively annulled the subsequent award issued in the Arbitration. The matter was first referred to a magistrate judge who recommended that the district court vacate the award. Goldgroup objected to the magistrate's recommendation. In May 2019, the district court rejected the magistrate's recommendation and issued an order confirming the award. Goldgroup Res., Inc. v. DynaResource De Mexico, S.A. De C.V., 381 F. Supp. 3d 1332 (D. Colo. 2019). After the district court entered final

7

judgment, DynaResources unsuccessfully moved to alter or amend the judgment. This appeal followed.

## Discussion

We review a district court's order vacating or confirming an arbitral award de novo but give "great deference" to the underlying decision by the arbitrator. Dish Network L.L.C. v. Ray, 900 F.3d 1240, 1243 (10th Cir. 2018) (citation omitted). "Errors in the arbitrator's interpretation of law or findings of fact do not merit reversal" of the award unless the arbitrator's decision is based on "manifest disregard of the law." Bowles Fin. Grp., Inc. v. Stifel, Nicolaus & Co., 22 F.3d 1010, 1012 (10th Cir. 1994) (citation omitted).

### A. Waiver

DynaResources first argues that the district court erred in holding that waiver was a question for the court without making a factual determination. Relying in part on Fed. R. Civ. P. 52(a)(1), DynaResources contends the district court was required to make findings of fact and conclusions of law as to whether Goldgroup in fact waived its right to arbitration.[3] Goldgroup, however, contends that DynaResources did not raise this issue below and has failed to preserve it.

---

[3] Despite arguing below that the issue of waiver by conduct was for the arbitrator to decide, on appeal Goldgroup does not challenge the district court's contrary conclusion that the issue is a question for a court.

8

The district court was not required to decide whether Goldgroup waived its right to arbitrate because the issue was not properly before it. In its motion to vacate the arbitration award, DynaResources identified five grounds for vacating the award under the Convention and an additional four grounds under the FAA. None of these involved a straightforward and properly developed argument that Goldgroup waived its right to arbitrate. At most, DynaResources tangentially referenced the issue of waiver in its motion to vacate in statements (1) noting that the Tenth Circuit has a six-factor test for waiver, without identifying those factors or discussing their application; (2) referencing the arbitrator's "ill-conceived no-waiver finding," 1 Aplt. App. 173, while arguing that the award should be vacated because of the arbitrator's corruption and partiality; and (3) arguing that the arbitrator exceeded his powers by deciding the waiver issue. DynaResources also points to its answer to Goldgroup's application to confirm the arbitration award stating that "[t]he Application fails because it is barred by the doctrine of waiver." 1 Aplt. App. 113. However, without more specificity or discussion, the statements in DynaResources's answer and motion to vacate simply are insufficient. See Simpson v. Carpenter, 912 F.3d 542, 565 (10th Cir. 2018). DynaResources did not preserve the issue for our review.

At oral argument, DynaResources also suggested that the issue was preserved because Goldgroup argued below that it had not waived the arbitration clause. This contention lacks merit. DynaResources cannot rely on Goldgroup's district court filings to preserve an issue it failed to adequately raise below or preserve for appeal. Cf. Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co., 497 F.3d 1135, 1142 (10th

9

Cir. 2007) (noting that, in order to show that an issue was preserved, the appellant must identify a place in the record where the <u>appellant</u> raised the issue before the district court). The district court therefore was not required to rule on the substantive waiver issue, and DynaResources has not preserved the issue for our review.

Goldgroup argues further that, even if DynaResources had preserved the issue, waiver is not available as a defense to confirmation of the award. Goldgroup contends that waiver is an FAA defense and FAA defenses do not provide grounds for vacating an award subject to the Convention. As discussed in greater detail below, we disagree and conclude that FAA defenses are available. Regardless, it is doubtful that Goldgroup waived the arbitration clause by initiating the Mazatlán Lawsuit even had DynaResources preserved the issue. The arbitration clause at issue applies only to disputes arising under the Option Agreement. DynaResources's bylaws require that all other disputes be resolved in Mexican courts. The Mazatlán Lawsuit was unrelated to the Option Agreement and sought only to invalidate the share issuance made during the secret shareholder meeting. Goldgroup's conduct in filing the Mazatlán Lawsuit is not inconsistent with its right to arbitrate claims arising under the Option Agreement; moreover, it did not prejudice DynaResources in its ability to protect its interests in the present dispute. <u>See</u> <u>Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 39 F.3d 1482, 1489 (10th Cir. 1994). We therefore doubt that this conduct would amount to waiver of the right to arbitrate claims arising out of the Option Agreement.

**B. Scope of Arbitrator's Authority**

DynaResources next argues that the award must be vacated under both Article 5(1)(c) of the Convention and § 10(a)(4) of the FAA because the arbitrator exceeded its authority by deciding an issue the parties did not agree to submit to arbitration, i.e., whether Goldgroup waived the right to arbitration.

    i.        Preservation and Availability of Defenses

Goldgroup contends that this defense to enforcement of the award fails under both the Convention and the FAA. First, it argues that DynaResources failed to raise the defense under Article 5(1)(c) of the Convention below and does not argue for plain error review on appeal, thereby waiving the defense. Second, it argues that the defense fails under § 10(a)(4) of the FAA because FAA defenses are not available in proceedings to confirm an arbitration award subject to the Convention.

In its petition to vacate the award, DynaResources did not raise Article 5(1)(c) as a ground for relief, arguing instead that the award was invalid under subsections (a), (b), (d), and (e) of Article 5(1). DynaResources did not argue for plain error review on appeal and accordingly has not preserved its challenge to the award under Article 5(1)(c) of the Convention. See Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1127–28 (10th Cir. 2011). However, DynaResources made substantially the same argument for vacatur of the award under § 10(a)(4) of the FAA before the district court. It has preserved its challenge to confirmation of the award on that basis.

Goldgroup argues that the district court erred in concluding that DynaResources was entitled to seek vacatur of the award under the FAA. It contends

11

that the grounds for relief enumerated in the Convention[4] are the only grounds available for vacating a nondomestic arbitration award[5] subject to the Convention.

The Convention directs a federal court to confirm an arbitration award unless it finds that one of the specified grounds for refusal to recognize or enforce the award listed in the Convention applies. See 9 U.S.C. §§ 207, 302. Consistent with that directive, we have recognized that the defenses to enforcement specified in the Convention provide the exclusive basis for vacating an arbitration award rendered in or under the arbitral law of a foreign jurisdiction. CEEG (Shanghai) Solar Sci. & Tech. Co. v. LUMOS LLC, 829 F.3d 1201, 1206 (10th Cir. 2016). However, we have not yet confronted the different question of whether the FAA's vacatur standards apply when a U.S. court is considering the confirmation of a nondomestic

---

[4] Two different conventions govern domestic enforcement of international arbitration awards: the Inter-American Convention on International Commercial Arbitration (the Panama Convention) and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the New York Convention). The Panama Convention applies if the majority of the parties to an arbitration agreement are citizens of countries that have ratified it, as is the case here. See 9 U.S.C. § 305. It also incorporates by reference nearly all the substantive provisions of the New York Convention. 9 U.S.C. § 302. Because "[t]here is no substantive difference" between the two conventions and the defenses under each are the same, Corporación Mexicana de Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración y Producción, 832 F.3d 92, 105 (2d Cir. 2016), we consider cases interpreting both conventions and refer generally to the "Convention."

[5] As relevant here, a nondomestic award is one that results from a dispute involving property located outside the United States or principally involving conduct and contract performance outside the United States. Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 19–20 (2d Cir. 1997).

12

arbitration award subject to the Convention and rendered in the United States or under U.S. arbitral law.

The majority of circuits to have considered this question have concluded that FAA defenses are available in such proceedings. See Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct., 618 F.3d 277, 291–92 (3d Cir. 2010); Gulf Petro Trading Co., Inc. v. Nigerian Nat'l Petroleum Corp., 512 F.3d 742, 746 (5th Cir. 2008); Jacada (Eur.), Ltd. v. Int'l Mktg. Strategies, Inc., 401 F.3d 701, 709 (6th Cir. 2005), abrogated on other grounds by Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576 (2008); Yusuf, 126 F.3d at 23; see also TermoRio S.A. E.S.P. v. Electranta S.P., 487 F.3d 928, 935 (D.C. Cir. 2007). In reaching this conclusion, these courts have generally adopted the reasoning set forth by the Second Circuit in Yusuf, 126 F.3d at 19–23. There, the court looked to Article 5(1)(e) of the Convention, which provides a defense to confirmation if the award "has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." Convention art. 5(1)(e). Based on this language, the Yusuf court concluded that the Convention "specifically contemplates" that a court in the country in which, or under the law of which, an arbitration award is made is "free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief." 126 F.3d at 23. In the United States, this includes the FAA.

This conclusion is supported at least implicitly by the Supreme Court's decision in BG Grp., PLC v. Republic of Argentina, 572 U.S. 25 (2014). There, the

13

Court considered whether § 10(a)(4) of the FAA required vacatur of a nondomestic award rendered in the United States. See id. at 44–45. Although the Court did not expressly address the applicability of FAA defenses under the circumstances, its consideration of the defense is consistent with the conclusion that FAA defenses are available to nondomestic awards issued in the United States or under U.S. arbitral law.[6]

Goldgroup relies primarily on cases involving arbitral awards rendered in or under the law of a foreign jurisdiction to support its position that the Convention defenses provide the exclusive basis for vacating an award subject to the Convention. See Admart AG v. Stephen & Mary Birch Found., Inc., 457 F.3d 302, 304 (3d Cir. 2006); M & C Corp. v. Erwin Behr GmbH & Co., KG, 87 F.3d 844, 846 (6th Cir. 1996). However, as the Second Circuit explained in Yusuf, "the Convention mandates very different regimes for the review of arbitral awards (1) in the state in which, or under the law of which, the award was made, and (2) in other states where recognition and enforcement are sought." 126 F.3d at 23. These cases therefore have

---

[6] We recognize that the Eleventh Circuit has reached a contrary conclusion but respectfully disagree. In Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH, the Eleventh Circuit held that a nondomestic arbitral award must be confirmed unless the challenging party succeeds on one of the seven defenses against confirmation enumerated in the Convention. 141 F.3d 1434, 1441–42 (11th Cir. 1998). It recently reaffirmed this view, finding that BG Group did not overrule Industrial Risk because the Court did not expressly consider the availability of FAA defenses for awards subject to the Convention and its decision therefore does not directly conflict with Industrial Risk. Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l GmbH, 921 F.3d 1291, 1301–02 (11th Cir. 2019), cert. denied, 140 S. Ct. 124 (2019).

14

limited application where, as here, the award was issued in the United States and confirmation is sought in a U.S. court.

Nevertheless, Goldgroup contends that this approach runs afoul of the federal policy favoring arbitration. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). But we are persuaded by the reasoning set forth by the Second Circuit in Yusuf and adopted by numerous other circuits. In our view, the Convention expressly contemplates that U.S. courts may apply U.S. arbitral law to awards rendered in or under the law of the United States. We therefore conclude that FAA defenses are available in proceedings to confirm a nondomestic arbitration award rendered in or under the law of the United States.

ii.     Section 10(a)(4)

Having concluded that FAA defenses are available in this context, we next consider DynaResources's argument that the arbitration award should be vacated under § 10(a)(4) of the FAA because the arbitrator exceeded the scope of his authority. DynaResources's argues the arbitrator exceeded his authority by ruling that Goldgroup did not waive its right to arbitration by defending the Texas Lawsuit or filing the Mazatlán Lawsuit.

Section 10(a)(4) permits a court to set aside an arbitral award where the arbitrator exceeded its powers in issuing the award. 9 U.S.C. § 10(a)(4); Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 569 (2013). A party seeking relief under this provision bears the heavy burden of demonstrating that the arbitrator's award "simply reflects his own notions of economic justice" rather than "drawing its

15

essence from the contract." Sutter, 569 U.S. at 569 (quotations and alterations omitted). As long as the arbitrator's decision is "even arguably construing or applying the contract," it will not be overturned even where the arbitrator committed a serious error. Id.

However, where the challenged arbitral decision involves a question of arbitrability, a court reviews the arbitrator's decision de novo. Questions of arbitrability typically relate to the subject matter of a dispute and whether the parties agreed to settle a particular type of dispute through arbitration or in court. Dish Network, 900 F.3d at 1254 (Tymkovich, J., concurring). They include "certain gateway matters" like whether the parties' arbitration agreement is valid or whether it applies to the dispute at issue. Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003). Questions of arbitrability are presumptively reserved for "judicial determination [u]nless the parties clearly and unmistakably provide otherwise." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986)).

Here, the parties dispute which standard of review applies to the arbitrator's decision on the waiver issue. Goldgroup suggests that the decision is subject to the extremely deferential standard of review described in Sutter, 569 U.S. at 569. DynaResources contends that the decision is subject to de novo review because it involves a question of arbitrability. On appeal, Goldgroup does not challenge the district court's conclusion that waiver is a question of arbitrability reserved for a court. Therefore, at least for purposes of this appeal, we assume that the district

16

court's conclusion is correct and the arbitrator's determination is subject to de novo review.

In any event, the parties' dispute over the applicable standard of review is ultimately beside the point for several reasons. First, although Goldgroup did not press this argument on appeal, we have repeatedly held that contracting parties' incorporation of the AAA Rules into their arbitration agreement constitutes "clear and unmistakable evidence of an agreement to arbitrate arbitrability." Dish Network, 900 F.3d at 1246; see also Belnap v. Iasis Healthcare, 844 F.3d 1272, 1281 (10th Cir. 2017). And here, the arbitration clause at issue expressly incorporates the AAA Rules, which granted the arbitrator "the power to rule on its own jurisdiction, including any objections to the existence, scope, or validity of the arbitration agreement." 1 Aplt. App. 55. Under our precedent, this constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability issues, including the issue of waiver. Dish Network, 900 F.3d at 1245.

Second, even assuming the arbitrator exceeded the scope of his authority, DynaResources has failed to demonstrate that any alleged error by the arbitrator in ruling on the waiver issue warrants vacatur of the award. FAA defenses are permissive rather than mandatory. See 9 U.S.C. § 10(a). And the FAA, like the Panama Convention, should be interpreted in light of the federal policy favoring arbitration agreements. Moses H. Cone Mem'l Hosp., 460 U.S. at 24. Both below and on appeal, DynaResources failed to provide any argument supporting its contention that Goldgroup waived the arbitration agreement. And, as noted above, it

is doubtful that Goldgroup's conduct in defending the Texas Lawsuit or initiating a lawsuit unrelated to the Option Agreement in a Mexican court amounted to waiver of its right to arbitrate disputes arising under the Option Agreement.

Moreover, the circumstances of the case do not justify vacatur of the award under § 10(a)(4). At the time the arbitrator issued his decision, a federal court had ruled that the arbitration could proceed and that the arbitrator should decide the waiver issue. Unsatisfied with that decision, DynaResources voluntarily dismissed that suit and sought to relitigate the issue in the Mexico City Lawsuit, allegedly without providing proper notice to Goldgroup and the AAA or informing the Mexico City Court of prior orders by the federal court and the arbitrator bearing on the issue. DynaResources then refused to participate in the arbitration based on the Mexico City Court's ruling in its favor. On these facts and given that the parties appear to have agreed to arbitrate arbitrability, vacatur of the award under § 10(a)(4) is not warranted.

**C. Annulment of the Award Under Article 5(1)(e) of the Convention**

Finally, DynaResources argues that vacatur of the award is warranted based on the Mexico City Court's order finding the arbitration agreement unenforceable because the parties waived the agreement by voluntarily submitting to the jurisdiction of Mexican courts on other occasions. DynaResources argues that this decision effectively annulled the subsequent award issued in the Arbitration.

Article 5(1)(e) of the Convention permits a court to vacate an arbitration award if the award "has been annulled or suspended by a competent authority of the State in

18

which, or according to the law of which, the decision has been made." Convention art. 5(1)(e). Courts construe Convention defenses narrowly, and the party opposing confirmation of the award bears the burden of furnishing proof of an enumerated defense. Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V., 970 F.3d 1269, 1295–96 (10th Cir. 2020).

DynaResources provides no authority to support its contention that Article 5(1)(e) of the Convention encompasses effective or preemptive annulment of an arbitration award not yet rendered. Such an expansive interpretation of Article 5(1)(e) is not persuasive. This defense should be narrowly construed in accordance with the federal policy favoring recognition and enforcement of arbitral awards. See id. at 1296.

Regardless, we doubt that DynaResources has the predicate for such a defense, as it has not shown that the Mexico City Court was competent to annul the award under Article 5(1)(e) of the Convention. The arbitration agreement specified that the appropriate venue and jurisdiction for any dispute arising under the Option Agreement is in Denver. And the arbitrator found, based on this agreement, that the Mexico City Court could not properly rule on DynaResources's arbitrability challenges. On appeal, as in the district court, DynaResources fails to provide any argument or authority supporting its contrary contention that the Mexico City Court was competent to annul the arbitration award.

Moreover, even if the Mexico City Court were competent to annul the award, its decision would not justify vacatur of the award because it improperly applied

19

Mexican law in concluding that Goldgroup waived its right to arbitrate. As discussed above, Article 5(1)(e) provides a defense to confirmation of an award where a competent authority applying the law of the country in which, or under the law of which, the arbitration award was made, concludes that the award must be vacated or set aside. For purposes of Article 5(1)(e), the law of the state in which the award was made "refers exclusively to procedural and not substantive law, and more precisely, to the regimen or scheme of arbitral procedural law under which the arbitration was conducted, and not the substantive law of contract which was applied in the case." Int'l Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera, Indus. Y Comercial, 745 F. Supp. 172, 178 (S.D.N.Y. 1990); see also Yusuf, 126 F.3d at 21. Here, while the award had not yet been issued at the time of the Mexico City Court's decision, the arbitration was pending in Denver and was conducted under the AAA-ICDR Rules. Accordingly, the Mexico City Court would have been required to apply U.S. law in determining whether Goldgroup's alleged waiver of the arbitration agreement mandated vacatur of the award.

DynaResources suggests that this default rule does not apply here because the Option Agreement specified that disputes would be governed by Mexican law. While the Option Agreement states that Mexican law applies "in respect to the shares of DynaMexico and the acquisition thereof," 4 Aplt. App. 1081, there is no indication that the parties intended for Mexican law to apply to anything other than substantive claims relating to the acquisition of the shares. Indeed, the arbitrator applied Mexican law only to Goldgroup's substantive claims and conducted the arbitration

20

according to the AAA-ICDR Rules.  Therefore, even if the Mexico City Court was competent to set aside or annul the arbitration award — and we do not think it was — its failure to apply U.S. law in doing so independently defeats DynaResources's defense under Article 5(1)(e) of the Convention.

AFFIRMED.