**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HAYDAY FARMS, INC., FKA
Hayday Farms Holdings, Ltd., a
former California corporation;
NIPPON KOKUSAI
AGRICULTURAL HOLDINGS,
INC., a Samoa corporation,

> *Petitioners-Appellees/*
> *Cross-Appellants,*

v.

FEEDX HOLDINGS, INC., a
Cayman Islands corporation,

> *Respondent-Appellant/*
> *Cross-Appellee.*

Nos.   21-55650
       21-55698

D.C. No.
2:21-cv-00346-
JGB-SP

OPINION

Appeal from the United States District Court
for the Central District of California
Jesus G. Bernal, District Judge, Presiding

Argued and Submitted September 1, 2022
Pasadena, California

Filed December 19, 2022

Before:  Milan D. Smith, Jr. and Ryan D. Nelson, Circuit Judges, and Gershwin A. Drain,[*] District Judge.

Opinion by Judge R. Nelson

---

## SUMMARY[**]

### Arbitration

The panel affirmed in part, and reversed in part, the district court's order confirming in part an arbitration award of more than $21 million entered against FeeDx Holdings, Inc. for breach of contract.

FeeDx and HayDay Farms, Inc. entered into an Exclusive Distribution and Processing Agreement (EDPA).  HayDay's President also entered into a Consulting Agreement with FeeDx through Nippon Agricultural Holgins, Inc.  The agreements provided for arbitration.  The EDPA also made HayDay and Nippon jointly and severally liable.  Neither HayDay nor FeeDx performed its side of the agreement.  The parties entered a Settlement Agreement, which modified, but did not replace, the EDPA.  After the Settlement Agreement did not see fruition, the parties went to arbitration.  An arbitration tribunal made awards against FeeDx, and HayDay and Nippon petitioned to confirm the

---

[*]The Honorable Gershwin A. Drain, United States District Judge for the Eastern District of Michigan, sitting by designation.

[**]This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

award.  FeeDx sought to vacate the award, arguing that it exceeded the tribunal's powers under the Federal Arbitration Act ("FAA").  The district court vacated $7 million from the award that reflected HayDay's unpaid installments under the Settlement Agreement, but confirmed the rest of the award.

The panel first considered the issue of jurisdiction.  The parties asserted diversity jurisdiction below and on appeal.  The panel held that there was no complete diversity of citizenship because there were foreign plaintiffs suing foreign defendants.  The panel examined whether another basis for jurisdiction existed.

The panel held that arbitration awards that, as here, involve at least one foreign party are governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), which Congress incorporated into federal law under the FAA.  9 U.S.C. § 203 provides federal district courts subject matter jurisdiction over actions or proceedings falling under the Convention.  No party asserted Section 203 as a basis for jurisdiction until the panel requested supplemental briefing on the issue.  The panel held that the parties' failure to assert federal question jurisdiction did not deprive the district court of subject matter jurisdiction where HayDay and Nippon's state court petition established § 203 jurisdiction.  The district court had subject matter jurisdiction, and this court had appellate jurisdiction under 9 U.S.C. § 16 and 28 U.S.C. § 1291.

FeeDx asked the panel to vacate the arbitration award pursuant to 9 U.S.C. § 10(a)(4).  Whether the FAA grounds for vacatur are available for awards governed by the Convention is an issue of first impression before the court.  The panel agreed with the Second, Third, Fifth, Sixth,

Tenth, and D.C. Circuits that FAA grounds for vacatur were available for awards governed by the Convention.

The panel held that Section 10(a)(4) was a high standard for vacatur, and was only warranted when an arbitration award exhibited a manifest disregard of law or was completely irrational. FeeDx argued the tribunal's award of $19.2 million in damages to HayDay and Nippon was completely irrational and manifestly disregarded the law. Specifically, FeeDx claimed that if the tribunal had properly interpreted the Settlement Agreement, FeeDx would have *received* an award worth $4.4 million, rather than being *liable* for a much larger amount. FeeDx claimed this outcome manifestly disregarded Cal. Civ. Code § 3358. The panel held that whether an arbitration award deviates from the best interpretation of the parties' agreement was not the standard for vacatur. The correct standard was whether the award exhibited a manifest disregard of law or reflected a completely irrational interpretation of the parties' agreements.

Under the appropriate standard of review, the panel agreed with the district court that the arbitrators' award should be confirmed on this issue. First, the award was not irrational because it drew its essence from the parties' agreement and did not ignore its controlling terms. Second, this portion of the award reflected a plausible interpretation of the parties' contracts. The tribunal determined the value of FeeDx's obligations under the Settlement Agreement to be $16.6 million for purchases predating the Agreement and $2.6 million following it. The panel held that because under this interpretation the award of pre-settlement damages did not put HayDay in a better position than it would have been in with full performance, the award also did not exhibit a manifest disregard of § 3358.

The tribunal also held that HayDay's obligation to pay FeeDx $8 million had been excused by FeeDx's breach, so it did not subtract that amount (less the $1 million that HayDay had actually paid under the Settlement Agreement) from the award. The district court found that this put HayDay and Nippon in a better position than it would have been in had both agreements been fully performed. The panel held that the tribunal did not manifestly disregard § 3358. In addition, the tribunal's decision was not completely irrational. Accordingly, the district court erred in vacating $7 million of the award. The panel reversed the district court's vacatur of this portion of the award.

FeeDx argued that under the plain terms of the Settlement Agreement's fee provision, Nippon cannot recover its expenses in connection with the dispute, only FeeDx or HayDay may recover. The panel held that the tribunal's interpretation that Nippon was a prevailing party was not completely irrational. The Settlement Agreement did not explicitly say that only HayDay or Nippon could recover fees and costs. Rather, it suggested that fees and costs could be recovered only by the prevailing party when FeeDx or HayDay brought a legal action to enforce its rights under the Settlement Agreement. The panel held that because both FeeDx and HayDay brought legal actions and because Nippon could have been liable for HayDay's alleged breach, it can plausibly be viewed as a prevailing party who can recover fees and costs.

Finally, FeeDx challenged the tribunal's award of attorneys' fees and costs incurred litigating claims arising under the EDPA to HayDay and Nippon. Under the tribunal's interpretation of the parties' agreement, the EDPA contained an attorneys' fees provision that was added later by the Settlement Agreement. Presumably, that modification

had retroactive effect. The panel held that this interpretation was not completely irrational, so it was a valid basis for the tribunal's award of pre-settlement attorneys' fees.

The panel affirmed the part of the district court's order confirming the award, reversed the part of the district court's order vacating the award, and remanded with instructions to confirm the whole award. Pursuant to the Settlement Agreement, FeeDx shall be liable for litigation costs associated with this action.

---

**COUNSEL**

Andrew M. Jacobs (argued), Snell & Wilmer LLP, Phoenix, Arizona; Glenn Trost, Trost Legal PC, Glendale, California; Jason T. Yu and Patricia Brum, Snell & Wilmer LLP, Los Angeles, California; Anna M. Adams, Snell & Wilmer LLP, Denver, Colorado; for Respondent-Appellant.

Charles D. Ferrari (argued), Ferrari Law PC, Rancho Cucamonga, California; Joshua H. Eichenstein (argued), Eichenstein Law Firm PC, Los Angeles, California; for Petitioners-Appellees.

**OPINION**

R. NELSON, Circuit Judge:

We review an arbitration award of more than $21 million entered against FeeDx Holdings, Inc. for breach of contract. Both sides appealed the district court's order confirming the award in part and vacating it in part. On appeal, we questioned whether subject matter jurisdiction existed because the parties were not diverse under 28 U.S.C. § 1332(a). We conclude that federal jurisdiction exists under 8 U.S.C. § 203 because the dispute arises under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. On the merits, we have serious concerns about whether the arbitration award was correct. That said, under the stringent deference we owe to arbitration awards, we confirm the award, reversing the district court as to the portion of the award that it vacated.

I

HayDay Farms, Inc. (HayDay) was a California corporation that bought and grew forage crops.[1]   To

---

[1] HayDay was the original contracting party and the party that initiated the underlying arbitration in 2017. It was merged out of existence in 2018, and HayDay Farms Holdings Ltd., a Delaware corporation, is the surviving entity. Although Hayday ceased its existence at the time of 2018 merger, HayDay brought the underlying petition in that name instead of its current legal name. HayDay Farms Holdings Ltd. holds the rights HayDay asserts. FeeDx Holdings, Inc. named the existing entity as a counterclaim defendant. No party challenged or otherwise raised HayDay's decision to bring this suit under the name of HayDay, and the parties do not address the effect on HayDay's ability to recover on its claims. *See, e.g.*, Fed. R. Civ. Pro. 25. The parties similarly made

accelerate the company's growth in the Asian market, in 2014, HayDay entered into a series of contracts with FeeDx Holdings, Inc. (FeeDx),[2] a newly formed Cayman Islands corporation. Under their Exclusive Distribution and Processing Agreement (EDPA), FeeDx became HayDay's exclusive contractor and distributor for forage crops globally and agreed to purchase a minimum quantity of crops from HayDay annually. FeeDx agreed to pay HayDay $8 million to expand HayDay's operations. The parties entered into a Supplemental Agreement where FeeDx agreed to purchase from HayDay 170,000 metric tons of crops at $360 per metric ton annually. Additionally, HayDay's president entered into a Consulting Agreement with FeeDx through Nippon Kokusai Agricultural Holdings, Inc. (Nippon), a later-formed Samoan corporation. The agreements provided for dispute resolution through arbitration, to be administered by the American Arbitration Association consistent with its Commercial Arbitration Rules. The EDPA also made HayDay and Nippon jointly and severally liable and contained a California choice-of-law provision.

Neither HayDay nor FeeDx performed its side of the agreement. FeeDx alleged HayDay could not supply 170,000 metric tons of crops per year and HayDay did not

---

no effort to alter the caption of this case. The HayDay entities will be referred to collectively as "HayDay" in this opinion.

[2] The parties' names in their briefs are not consistent with their names in the record. For example, FeeDx appears to be referred to as FeeDx Cayman and FeeDx Holding, Inc. in the EDPA. Nippon Kokusai Agricultural Holdings, Inc. appears in the EDPA as Nippon Kokusai Investment Holdings, Inc. and in the Settlement Agreement as Nippon Kokusai Agriculture Holdings, Inc. But the parties have not made any distinction between these entities in this litigation.

always charge $360 per ton, but sometimes more and sometimes less. FeeDx also claimed that HayDay violated the exclusivity agreement by selling to other customers.

For its part, HayDay alleged that FeeDx failed timely to purchase hay, paid invoices late, failed to pay contracted prices, failed to purchase all of HayDay's production and generally underfunded HayDay's operations so it could not fulfill its obligations under the EDPA.

To resolve their dispute, the parties entered into the Settlement Agreement (SA) to wind down and terminate their relationship. The SA modified, but did not replace, the EDPA. Its key modifications were that:

- HayDay would pay FeeDx $8 million in monthly installments.

- Once HayDay paid $8 million, the parties would mutually release all claims arising under the EDPA, and terminate the EDPA.

- As of December 2016, HayDay's obligation to sell to FeeDx and FeeDx's obligation to purchase crops from HayDay would terminate.

- If FeeDx or Hayday brought legal action to enforce their rights under the SA, the prevailing party would be entitled to recover expenses, including reasonable attorneys' fees.

Like the prior arrangement, the SA never saw fruition. After signing the SA, FeeDx did not purchase any forage crops, though it was obligated to do so through the end of 2016. HayDay made its first $1 million installment payment but did not pay the remaining $7 million.

The parties went to arbitration.  HayDay brought claims against FeeDx for, among other things, (i) breach of the EDPA, (ii) a declaration that the SA was void, and (iii) rescission of the SA.  Nippon brought claims against FeeDx for declaratory relief and rescission of the SA.  FeeDx brought a counterclaim against HayDay for breach of the SA, but no claims against Nippon.

Three arbitrators ("tribunal") conducted the proceedings, which spanned four years in two phases.  In the liability phase, the tribunal held that the SA was neither void nor rescinded, and that it modified, but did not supplant, the EDPA.  It held that pre-settlement claims were never released because FeeDx had materially breached the SA by failing to continue purchasing crops, which excused HayDay's payment of the remaining $7 million.  The tribunal also held that FeeDx had breached the EDPA by failing either to timely pay invoices or purchase required quantities.  The tribunal rejected both of Nippon's claims.

In the damages phase, the tribunal made awards against FeeDx and in favor of HayDay and Nippon.  It awarded HayDay and Nippon jointly $19,249,596 for lost profits under the EDPA (including $2,639,622 for profits lost between the SA's signing and the end of 2016).  It also awarded them $1,648,620.17 in attorneys' fees and expenses.  Finally, the tribunal declined to reduce the award by the additional $7 million that HayDay would have had to pay FeeDx had the SA been fully performed because it was "not unreasonable" for HayDay to expect to use profits from FeeDx's ongoing crop purchases to pay the required $8 million under the SA.

HayDay and Nippon petitioned in state court to confirm the award.  FeeDx removed the case to federal court,

asserting diversity jurisdiction under 28 U.S.C. § 1332(a). FeeDx asserted no other ground for subject matter jurisdiction.

FeeDx then sought to vacate the award, arguing that it exceeded the tribunal's powers under the Federal Arbitration Act (FAA). In relevant part, FeeDx disputed (1) the award of pre-settlement damages of about $16.6 million to HayDay and Nippon, (2) the award of damages, attorneys' fees, and costs generally to Nippon, and (3) award of attorneys' fees and costs to HayDay and Nippon for breach of the EDPA.

The district court did not consider its jurisdiction; it proceeded to the merits. The district court vacated $7 million from the award that reflected HayDay's unpaid installments under the SA. The district court reasoned that the tribunal's inclusion of that amount put HayDay in a better position than it would have been in had the SA been fully performed. The tribunal thus manifestly disregarded California law, which bars any person from receiving a windfall from the breach of a contract. The district court confirmed the rest of the award. The parties timely appealed.

## II

We review our jurisdiction de novo. *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1140 (9th Cir. 2009). We review a district court's decision to confirm or vacate an arbitration award de novo. *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 918 (9th Cir. 2009) (citation omitted).

## III

We must first determine our jurisdiction. "It is the duty of federal courts to assure themselves that their jurisdiction is not being exceeded." *In re Ryther*, 799 F.2d 1412, 1414

(9th Cir. 1986) (quoting *Csibi v. Fustos*, 670 F.2d 134, 136 n.3 (9th Cir. 1982)). "Lack of subject matter jurisdiction can be asserted by any party at any time or raised by a court sua sponte." *Id.* (citation omitted).

The parties asserted diversity jurisdiction below and on appeal.[3]   Section 1332(a)(2) grants district courts original jurisdiction over civil actions with an amount in controversy exceeding $75,000 between "citizens of a State and citizens or subjects of a foreign state." It has long been established that "[d]iversity jurisdiction does not encompass foreign plaintiffs suing foreign defendants." *Faysound Ltd. v. United Coconut Chems., Inc.*, 878 F.2d 290, 294 (9th Cir. 1989) (citing *Cheng v. Boeing Co.*, 708 F.2d 1406, 1412 (9th Cir. 1983)). This is the "complete diversity" requirement. Here, we have a Samoan corporation (Nippon) and a Cayman Islands corporation (FeeDx) on opposite sides of the litigation. At face value, this would render diversity of citizenship incomplete. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 580 n.2 (1999). Even so, because we must determine our own jurisdiction, we may examine whether another basis for jurisdiction exists. *See, e.g.*, *Fidelity & Cas. Co. v. Reserve Ins. Co.*, 596 F.2d 914, 918 (9th Cir. 1979) ("[D]ismissing a case for want of jurisdiction is not favored when an alternative basis for jurisdiction exists even if the alternative basis was not asserted in the trial court.").

Arbitration awards that, as here, involve at least one foreign party are governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards

---

[3] HayDay and Nippon reversed their position after we requested supplemental briefing on jurisdiction.

("Convention"), June 7, 1959, 21 U.S.T. 2517, which Congress incorporated into federal law in the FAA. *See* 9 U.S.C. § 202. Section 203 provides federal district courts subject matter jurisdiction over actions or proceedings falling under the Convention. *See Day v. Orrick, Herrington & Sutcliffe, LLP*, 42 F.4th 1131, 1133 (9th Cir. 2022).

Section 203 would appear to be a straightforward grant of subject matter jurisdiction here. But neither party asserted it as a basis for jurisdiction until we requested supplemental briefing on the issue. We therefore must consider whether the parties' failure to assert federal question jurisdiction deprived the district court of subject matter jurisdiction.

HayDay and Nippon first petitioned to confirm the award in state court, and FeeDx removed it to federal district court, asserting only diversity jurisdiction. The case was not remanded, and district court entered final judgment. "Once judgment has been entered in a case that was removed to federal court . . . . [t]he issue becomes not whether the removal was proper, but whether the district court had jurisdiction at the time it issued its judgment." *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 342 (9th Cir. 1996) (citation omitted).

Here, HayDay and Nippon's state court petition established § 203 jurisdiction. A cause of action "arises under" federal law for jurisdictional purposes when the plaintiff's well-pleaded complaint raises federal law issues, even if the federal claim is not explicitly invoked. *See, e.g.*, *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 67 (1987). HayDay and Nippon's state court petition stated that it was an action to confirm an arbitration award, and stated that the award was between at least one foreign party. Those facts trigger § 203. And under § 203, any petition to confirm,

vacate, or modify an international arbitration award is federal in character.

Thus, the district court had subject matter jurisdiction over the action. And we have appellate jurisdiction under 9 U.S.C. § 16 and 28 U.S.C. § 1291. We now proceed to the merits.

IV

FeeDx asks us to vacate the arbitration award pursuant to 9 U.S.C. § 10(a)(4), which grants us extremely limited authority to review arbitration awards.

A

Section 10(a)(4) is not expressly made available by the Convention, which governs the instant award. Whether the FAA grounds for vacatur are available for awards governed by the Convention is an issue of first impression for us. That said, we do not decide this question on a blank slate. The Second, Third, Fifth, Sixth, Tenth, and D.C. Circuits have all concluded that FAA defenses are available for awards governed by the Convention. *See Goldgroup Res., Inc. v. DynaResource de Mexico, S.A. de C.V.*, 994 F.3d 1181, 1189–90 (10th Cir. 2021) (collecting cases). To our knowledge, no circuit has concluded that they are not.[4]

---

[4] The Eleventh Circuit has held that "no defense against enforcement of an international arbitral award under Chapter 2 of the FAA is available on the ground that the award is 'arbitrary and capricious,' or on any other grounds not specified by the Convention." *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1443 (11th Cir. 1998). Because we hold that Article V(1)(e) of the Convention incorporates FAA defenses, *see infra*, our holding does not conflict with *Industrial Risk Insurers*.

We agree that FAA grounds for vacatur are available for awards governed by the Convention. We have already held that "[w]hen interpreting the defenses to confirmation of an arbitration award under the Convention, we may look to authority under the FAA." *Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 836 (9th Cir. 2010) (citation omitted). And Article V(1)(e) of the Convention provides a defense to confirmation if the award "has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." Courts have generally adopted the Second Circuit's view that Article V(1)(e) "contemplates that the [country] in which, or under the law of which, the award is made, will be free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief." *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997); *see also Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*, 618 F.3d 277, 291–92 (3d Cir. 2010); *Gulf Petro Trading Co., v. Nigerian Nat'l Petroleum Corp.*, 512 F.3d 742, 746 (5th Cir. 2008); *Jacada (Eur.), Ltd. v. Int'l Mktg. Strategies, Inc.*, 401 F.3d 701, 709 (6th Cir. 2005), *abrogated on other grounds by Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576 (2008); *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007). We find that reasoning persuasive.

## B

Even with FAA grounds for vacatur available to FeeDx, § 10(a)(4) "is a high standard for vacatur." *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010). We may vacate an arbitration award only "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite

award upon the subject matter submitted was not made." § 10(a)(4). "[I]t is not enough [] to show that the [arbitrator] committed an error–or even a serious error." *Lagstein*, 607 F.3d at 641. This "extremely limited" review authority "is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003).

Vacatur under § 10(a)(4) is warranted when an arbitration award exhibits a manifest disregard of law or is completely irrational. "[M]anifest disregard . . . requires something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law." *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009) (citations and internal quotations omitted). "To demonstrate manifest disregard, the moving party must show that the arbitrator understood and correctly stated the law, but proceeded to disregard the same." *Id*. (citations omitted and cleaned up). "There must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it." *Id*. (citations omitted and cleaned up). We also must accept the arbitrator's findings of fact. *See Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 838 (9th Cir. 2004) ("Errors of fact do not generally constitute manifest disregard" of law).

An award may also be vacated if it is "completely irrational." *Bosack*, 586 F.3d at 1106 (quoting *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009)). "Under this standard of review, we decide only whether the arbitrator's decision draws its essence from the contract, not the rightness or wrongness of the arbitrator's contract interpretation." *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th Cir.

2019) (cleaned up).  An award is completely irrational if it ignores controlling terms of the parties' contract.  *See Bosack*, 586 F.3d at 1107; *Aspic*, 913 F.3d at 1167.

Further, "[a]n arbitrator does not exceed its authority if the decision is a plausible interpretation of the arbitration contract."  *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1177 (9th Cir. 2010) (citations and internal quotations omitted).  "Accordingly, the court must defer to the arbitrator's decision as long as the arbitrator even arguably construed or applied the contract."  *Id*. (cleaned up).

1

FeeDx argues that the tribunal's award of $19.2 million in damages to HayDay and Nippon is completely irrational and manifestly disregards the law.  FeeDx claims that if the tribunal had properly interpreted the SA, FeeDx would have *received* an award worth $4.4 million, rather being *liable* for a much larger amount.[5]  Thus, HayDay and Nippon's total damages award of $19.2 million, FeeDx claims, put it in a far better position than if both parties performed under the SA.  FeeDx claims that outcome manifestly disregards Cal. Civ. Code § 3358, which prohibits a person from recovering "a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides."  FeeDx briefed the tribunal on § 3358, but the tribunal never acknowledged it.

---

[5] According to this view of the SA, FeeDx would have owed HayDay $2.6 million in damages representing HayDay's profit from FeeDx's crop purchases from September to December 2016; HayDay would have paid FeeDx the remaining $7 million unpaid settlement balance; and pre-settlement claims of both parties would have been released.

FeeDx probably offers the best interpretation of the parties' agreements, because it fully resolves the parties' pre-settlement claims, as we think they intended. But whether an arbitration award deviates from the best interpretation of the parties' agreement is not the standard for vacatur; we ask whether the award exhibits a manifest disregard of law or reflects a completely irrational interpretation of the parties' agreements. Imposing a stricter standard of review would interfere with the parties' bargained-for contract to resolve their dispute through binding arbitration. Under the appropriate standard of review, we agree with the district court that the arbitrators' award should be confirmed on this issue.

First, the award was not irrational because it drew its essence from the parties' agreement and did not ignore its controlling terms. *See Comedy Club*, 553 F.3d at 1288. The tribunal considered the parties' various contracts. It correctly acknowledged that the condition precedent for the release of EDPA claims—HayDay's final installation payment—never occurred. And it correctly noted that the SA modified the EDPA without supplanting it. The award was not some form of vigilante justice; it was tribunal's best effort to construe the parties' agreement.

Second, this portion of the award reflects a plausible interpretation of the parties' contracts. *See Bosack*, 586 F.3d at 1107. There is a rational alternative interpretation of the SA that does not bring the award of pre-settlement damages in conflict with § 3358, which goes like this: The SA modified FeeDx's purchase obligations under the EDPA, terminating them on December 31, 2016. But since the SA did not supplant the EDPA, FeeDx's full performance of its duties under the modified EDPA—performance required under the SA through 2016—required it to not only satisfy

its purchase obligations from the start of the SA, but to satisfy *all* its purchase obligations under the EDPA, including, retroactively, those that preceded the SA. Although the tribunal did not expressly indicate that this was the interpretation of the SA it adopted, the award itself suggests this is the view it took.

According to this interpretation, then, for FeeDx to fully perform its obligations under the SA, it would have needed to continue its crop purchases through 2016 and retroactively meet its EDPA obligations that predated the SA. The tribunal determined the value of these obligations to be $16.6 million for purchases predating the SA and $2.6 million following it. Had FeeDx satisfied those purchase obligations, HayDay would not have been excused from its obligation to pay FeeDx $8 million. HayDay would have paid the $8 million, satisfying the release-of-claims condition, and all pre-settlement claims would be released. But the $16.6 million in pre-settlement damages would not be released, because it had been paid to HayDay as part of FeeDx's full performance under the EDPA-cum-SA.

Again, this is probably a misreading of the SA: What incentive would FeeDx have to agree to such a settlement? But that interpretation is plausible. Because the complete irrationality standard "is extremely narrow and is satisfied only where the arbitration decision fails to draw its essence from the agreement," *Comedy Club*, 553 F.3d at 1288 (cleaned up), FeeDx's effort to vacate the award on that ground, though sympathetic, fails. To hold otherwise would impermissibly interfere with the parties' contractual choice to arbitrate their dispute, and grant FeeDx an unwarranted do-over.

Because under this interpretation the award of pre-settlement damages did not put HayDay in a better position than it would have been in with full performance, the award also did not exhibit a manifest disregard of § 3358.

2

But the tribunal did not just hold that HayDay and Nippon could recover both pre- and post-settlement damages. It also held that HayDay's obligation to pay FeeDx $8 million had been excused by FeeDx's breach, so it did not subtract that amount (less the $1 million that HayDay had actually paid under the SA) from the award.

The district court found that this put HayDay and Nippon in a better position than they would have been in had both agreements been fully performed. According to the tribunal's interpretation of the SA, discussed above, FeeDx had to make purchases worth $19.2 million, HayDay would make installment payments of $8 million, and all pre-settlement claims would be released. This would net HayDay $11.2 million. The tribunal, however, awarded HayDay and Nippon $18.2 million ($19.2 million minus HayDay's $1 million installment payment). According to the logic of the award, HayDay and Nippon seemingly received a windfall of $7 million.

That windfall arguably violates California law, which governs the parties' contracts. Once more, Cal. Civ. Code § 3358 states: "Except as expressly provided by statute, no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides."

Even so, the tribunal did not manifestly disregard § 3358. True, FeeDx briefed the tribunal on the statute, so

the tribunal was "aware" of this general principle. *Bosack*, 586 F.3d at 1104. But as the district court found, there is no sign that the tribunal recognized that § 3358 applied to the set of facts before it—such that it "intentionally disregarded" § 3358. *Id*. If the tribunal did not recognize that its award provided HayDay and Nippon a windfall, it could not have manifestly disregarded a law prohibiting that outcome.

For that reason, the district court erred in vacating $7 million of the award. The district court reasoned that "the impact of this omission is too significant to be countenanced in light of Section 3358," and that HayDay and Nippon's windfall in violation of § 3358 alone was sufficient grounds to vacate that portion of the award. We share the district court's concern about a seemingly unfair damages award that likely violates § 3358. But Congress has carefully limited our authority to review arbitration awards under the FAA, which does not permit "unnecessary public intrusion into private arbitration procedures." *U.S. Life*, 591 F.3d at 1173. And Congress did so for valid reasons—to protect the contractual choice by the parties to "forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019). Because the tribunal did not manifestly disregard § 3358, we lack the power to vacate this portion of the award.

FeeDx correctly notes that our precedent supports the proposition that "[i]n some circumstances . . . legally dispositive facts are so firmly established that an arbitrator cannot fail to recognize them without manifestly disregarding the law." *Coutee v. Barington Cap. Grp.*, 336 F.3d 1128, 1133 (9th Cir. 2003) (citation omitted). It argues

that HayDay and Nippon's windfall is a "legally dispositive fact," so the award exhibited manifest disregard of the law whether or not the tribunal recognized that § 3358 applied.

Not so. The quintessential example of a "legally dispositive fact" we considered in *Coutee* came from an earlier case, *American Postal Workers Union v. U.S. Postal Service*, 682 F.2d 1280 (9th Cir. 1982). *Coutee*, 336 F.3d at 1133. In *American Postal*, we reviewed an arbitration decision requiring the Postal Service to reinstate a former employee who had conceded that he had participated in a federal strike, despite federal law prohibiting persons who had participated in a strike against the federal government from holding federal government positions. 682 F.2d at 1284–86. We said that even if the arbitrator had not recognized that the employee had participated in a strike, because that fact was not in dispute in the record, the arbitrator could not have disregarded it without manifestly disregarding the law. *Id*. at 1284. In *Coutee*, we explained that *American Postal* "recognizes that because facts and law are often intertwined, an arbitrator's failure to recognize undisputed, legally dispositive facts may properly be deemed a manifest disregard for the law." 336 F.3d at 1133.

HayDay and Nippon's $7 million windfall is not the same sort of undisputed, legally dispositive fact we had in mind when we considered that picketing postal employee. Rather, the windfall is an inference about HayDay and Nippon's relative position compared to a counterfactual world in which all parties had fully performed. Section § 3358 does not set forth a specific standard with which the award would be objectively at odds. Instead, § 3358 says no person can recover a greater amount from a contract's breach than from its performance. Purely on its face, that standard imposes a legal conclusion based on factual findings of the

import of the parties' relative performance. The award does not conflict with that admonishment. So, even under *Coutee*'s more permissive standard, the award is not legally irreconcilable in the way that standard requires. To hold otherwise requires a merits review that the FAA does not authorize. *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 664 (9th Cir. 2012).

Finally, because the tribunal's decision not to reduce the award by the $7 million was not based on its interpretation of the parties' contracts, but on its application of legal principles to fashion a remedy for the contracts' breach, it was not completely irrational.

We therefore reverse the district court's vacatur of this portion of the award. We do not do so gladly. This award shows in stark terms the real risks that parties assume when they trade away their right to adjudicate their claims in court for the potential efficiencies of arbitration. When, as here, things go wrong, our power to fix them is uncomfortably, but plainly, limited under the FAA.

## B

FeeDx argues that under the plain terms of the SA's fee provision, Nippon cannot recover its expenses ("fees and costs") in connection with the dispute. The SA states: "If FeeDx or Hayday brings legal action to enforce its rights under this Settlement Agreement, the prevailing party will be entitled to recover its expenses (including reasonable attorneys' fees) incurred in connection with action and any appeal." FeeDx claims that based on the express language of this provision, only FeeDx or HayDay, but not Nippon, is allowed to recover fees and costs arising under the SA.

The tribunal's interpretation that Nippon is a prevailing party is not completely irrational.  The tribunal credited HayDay and Nippon's position on the definition of a prevailing party in the award based on *DisputeSuite.com, LLC v. Scoreinc.com*, 2 Cal. 5th 968 (2017).  That case, at least within the context of a California fee-recovery statute, defined the prevailing party as including "a defendant who defeats recovery by the plaintiff on the plaintiff's entire contract claim."  *Id*. at 973.  Under the EDPA, HayDay and Nippon were jointly and severally liable, and the SA did not modify that provision.  If FeeDx had prevailed in its claim against HayDay for breach, Nippon may have been liable under the joint and several liability clause, which the tribunal viewed as still in effect.  It is plausible then that Nippon was a "defendant who defeats recovery" as "prevailing party" was defined in *DisputeSuite.com*.

The SA also does not explicitly say that only HayDay or Nippon could recover fees and costs.  Rather, it suggests that fees and costs can be recovered only by the prevailing party when FeeDx or HayDay brings a legal action to enforce its rights under the SA.  It does not limit the parties against whom FeeDx or HayDay can bring claims to enforce their SA rights.  Both FeeDx and HayDay brought legal actions and because Nippon could have been liable for HayDay's alleged breach, it can plausibly be viewed as a prevailing party who can recover fees and costs.  Thus, it was within the tribunal's powers to award Nippon fees and costs.

## C

Finally, FeeDx challenges the tribunal's award of attorneys' fees and costs incurred litigating claims arising under EDPA to HayDay and Nippon.  FeeDx notes that only the SA had an attorneys' fees provision.  It relies on

California law requiring that "[w]here a cause of action based on a contract providing for attorneys' fees is joined with other causes of action beyond that contract, the prevailing party may recover attorneys' fees . . . only as they relate to the contract action." *Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124, 129 (1979). But this misconstrues the tribunal's view of the parties' contracts. The tribunal viewed the SA as modifying the terms of the EDPA. One of those modifications was the introduction of an attorneys' fees provision in the SA. Under the tribunal's interpretation of the parties' agreement, the EDPA did contain an attorneys' fees provision—just one that was added later by the SA. Presumably, that modification had retroactive effect. That interpretation is not completely irrational, so it is a valid basis for the tribunal's award of pre-settlement attorneys' fees.

V

Subject matter jurisdiction exists under 9 U.S.C. § 203. The tribunal did not exceed its powers in issuing the award. We therefore affirm the part of the district court's order confirming the award and reverse the part of the district court's order vacating the award, and remand with instructions to confirm the whole award. Pursuant to the SA, FeeDx shall be liable for litigation costs associated with this action.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**